Argued and submitted April 7, affirmed August 6, 2003

In the Matter of the ORS 656.248(12),
Medical Fee Dispute of Ernest E. Lloyd, Claimant.

SAIF CORPORATION
and Miller Timber Services, Inc.,
*Petitioners,*

*v.*

Inez ELLER, CFA,
and Department of Consumer and Business Services,
*Respondents.*

H00-117; A116500

74 P3d 1093

Jerome P. Larkin argued the cause and filed the briefs for petitioners.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent Inez Eller.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

In this medical fee dispute arising out of a workers' compensation claim, petitioners SAIF Corporation and its insured, Miller Timber Services, Inc. (Miller),[1] seek judicial review of a final order of the Department of Consumer and Business Services (DCBS), Workers' Compensation Division (WCD or the division). In that order, DCBS concluded that the services of a nonlicensed surgical assistant, Inez Eller, were reimbursable. SAIF makes both a procedural and a substantive challenge to the order, the first relating to the authority of a WCD employee to file exceptions to the hearing officer's proposed order and the second relating to DCBS's conclusion that Eller was entitled to reimbursement. We affirm.

We take the undisputed facts from DCBS's final order and the record. On November 2, 1998, claimant, Ernest Lloyd, suffered a compensable right knee injury while working for Miller. SAIF, on behalf of Miller, accepted the injury and several conditions that resulted from it. On May 22, 2000, Dr. Walton performed a compensable surgery to repair claimant's right knee. Eller assisted in the surgery under the direct supervision and control of Walton. Eller was certified as a Surgical Technologist/First Assistant (CFA) by the Liaison Council on Certification for the Surgical Technologist. However, the State of Oregon does not require licensing of CFAs, and Eller was not licensed to provide medical services. Eller was not employed or paid by the hospital where the surgery was performed or by Walton. Eller billed SAIF for her services in the amount of $374. SAIF declined to reimburse Eller.

Eller sought administrative review of SAIF's disallowance of her bill. The Medical Review Unit (MRU) of WCD reviewed the matter and, on November 9, 2000, it issued an administrative order directing SAIF to reimburse Eller. SAIF requested a contested case hearing on the dispute. On February 27, 2001, a telephonic hearing was held before a hearing officer assigned from the Hearing Officer Panel. *See*

---

[1] We refer to petitioners jointly as SAIF.

Or Laws 1999, ch 849. On March 16, the hearing officer issued a proposed order in which he concluded that, under the division's administrative rules pertaining to categories of services eligible for reimbursement, Eller was not entitled to reimbursement. Consistently with OAR 137-003-0650(2) and OAR 436-001-0275(1) and (2),[2] the proposed order notified the parties that, "[i]f no exceptions are filed, this order shall become final upon expiration of 30 days following the date of service on the parties."

On April 10, 2001, the manager of WCD's Dispute Resolution Section (DRS) sent a memorandum to the director of DCBS, stating that she was "filing exceptions" to the hearing officer's proposed order and asserting that the hearing officer erred in various respects in interpreting and applying the relevant administrative rules pertaining to reimbursement for medical services. DCBS notified SAIF and other participants in the matter that WCD's "exceptions" had been filed in a timely manner and that responses were due by a specified date. On April 25, 2001, SAIF responded by letter, disputing WCD's interpretation and application of the relevant rules. Approximately three months later, in July 2001, SAIF moved to dismiss WCD's "exceptions" on the ground that the DRS manager "lack[ed] standing to file exceptions" to the proposed order and that "only the Assistant Attorney General can file such exceptions in this case."

On September 21, 2001, DCBS, through the WCD administrator, issued a final order in the case. As pertinent here, DCBS denied SAIF's motion to dismiss WCD's exceptions to the proposed order, concluding that the DRS manager was authorized to file the exceptions in her capacity as the authorized agency representative in the proceeding under ORS 183.452 and OAR 436-001-0030 and under the model rule providing for filing exceptions to proposed orders, OAR 137-003-0650. On the merits, DCBS concluded that Eller's services were reimbursable.

In its first assignment of error on judicial review, SAIF asserts that DCBS erred in denying its motion to dismiss the DRS manager's "exceptions" to the hearing officer's

---

[2] The relevant administrative rules are set out in the discussion. Unless otherwise noted, references in this opinion to statutes and rules refer to the versions in effect when Eller provided services to claimant in May 2000.

proposed order and, relatedly, in modifying the hearing officer's proposed order in response to those exceptions. SAIF contends that the division, through the DRS manager, was not authorized to file exceptions because it was not a "party" to the proceeding and because the proposed order was not "adverse" to the agency, within the meaning of the quoted terms in OAR 137-003-00650(1). SAIF reasons that, under ORS 183.464, because no valid timely exceptions were taken, the proposed order became the final order 30 days after it was served.[3]

DCBS responds that it properly denied SAIF's motion to dismiss the manager's "exceptions" to the proposed order because those "exceptions" were authorized under OAR 137-003-0650(4), providing that "[a]gency staff may comment to the agency * * * on the proposed order, and the agency * * * may consider such comments," subject to rules relating to *ex parte* communications with, respectively, a hearing officer and an agency. At oral argument, DCBS postulated that the division also was authorized to file exceptions under OAR 137-003-0650(1), because a proposed order is "adverse" to an agency when it is inconsistent with the agency's view of the proper analysis or outcome in the proceeding. Finally, DCBS argues that, even in instances in which no exceptions are filed, an agency is authorized to modify a hearing officer's proposed order under OAR 137-003-0655.[4]

---

[3] ORS 183.464 provides, in part:

"(1) Except as otherwise provided in subsections (1) to (4) of this section, unless a hearing officer is authorized or required by law or agency rule to issue a final order, the hearing officer shall prepare and serve on the agency and all parties to a contested case hearing a proposed order, including recommended findings of fact and conclusions of law. *The proposed order shall become final after the 30th day following the date of service of the proposed order, unless the agency within that period issues an amended order.*

"(2) An agency may by rule specify a period of time after which a proposed order will become final that is different from that specified in subsection (1) of this section.

"(3) If an agency determines that additional time will be necessary to allow the agency adequately to review a proposed order in a contested case, the agency may extend the time after which the proposed order will become final by a specified period of time. The agency shall notify the parties to the hearing of the period of extension."

(Emphasis added.)

[4] In their briefs and at oral argument, the parties relied in part on portions of the October 3, 2001, version of OAR 137-003-0655. We treat those arguments as relating to the equivalent portions of that rule that were in effect at the time of this

SAIF replies that DCBS cannot rely on the subsection of OAR 137-003-0650 providing for submission of comments by agency staff because, as a factual matter, the DRS manager herself and the division expressly treated the manager's submissions as "exceptions" and because substantial evidence supports that factual "finding." It also contends that, consistently with OAR 137-003-0655, DCBS lacked authority to issue a final order unless a party—not agency staff—has filed exceptions, or unless the order was adverse to the agency.

■ Although DCBS does not contend that SAIF failed to preserve its first assignment of error, we nevertheless are obligated to consider that question. *State v. Wyatt,* 331 Or 335, 346-47, 15 P3d 22 (2000); *Peiffer v. Hoyt,* 186 Or App 485, 490 n 4, 63 P3d 1273 (2003). In its motion to dismiss the DRS manager's exceptions, SAIF argued that she "lacked standing" to file exceptions to the proposed order and that only an assistant attorney general was authorized to file exceptions. In particular, SAIF argued that, consistently with ORS 183.452 (providing for representation at contested case hearings by assistant attorneys general or, alternatively, agency employees) and ORS 183.315(1) (providing that ORS 183.452 does not apply to, among other entities, DCBS with respect to its functions under ORS chapter 656), agency personnel can never represent the agency in proceedings under ORS chapter 656. Again relying on ORS 183.432, as well as its implementing model rule, OAR 137-003-0545, SAIF also argued that the attorney general did not consent to the manager's representation of the agency; that there was no rule authorizing her representation; and that, in any event, there is no authority for an agency employee to represent the agency after a hearing is concluded. SAIF also argued that, by filing exceptions, the manager engaged in the unauthorized practice of law in contravention of ORS 9.320 and ORS chapter 180. None of those arguments gave the division or DCBS the opportunity to consider the issues that SAIF now raises based on OAR 137-003-0650(1) and ORS

---

proceeding. Although the rule was reformatted and renumbered in part, the substance of the relevant portions of the rule is the same in both versions.

183.464.[5] *See Bates v. Czerniak*, 187 Or App 8, 11 n 1, 66 P3d 519, *rev den*, 335 Or 422 (2003) (requirement of preservation of issues in lower tribunal as a prerequisite to appellate review affords opportunity for litigants to be heard and for tribunal to rule on those issues, thereby promoting efficient judicial administration, citing *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995)). SAIF's first assignment of error was not preserved.

We turn to SAIF's second assignment of error, in which it argues that DCBS erred in ordering it to reimburse Eller for her services. SAIF argues that OAR chapter 436, division 9, governs *reimbursement* for medical services in workers' compensation claims and that no rule in that division expressly authorizes payment for nonlicensed surgical assistants, whereas a specific rule, OAR 436-009-0050(3), does authorize separate reimbursement for the surgery-related services of physician assistants and nurse practitioners. Conversely, SAIF argues, OAR chapter 436, division 10, which contains rules on which the administrator relied in entering his final order, applies only to the *provision* of medical services. Therefore, SAIF urges, Eller is not entitled to separate reimbursement. DCBS responds that Eller's services were reimbursable under OAR 436-010-0210(3), providing for provision of medical services by nonlicensed persons, and were not precluded from reimbursement under OAR 436-009-0050(3). It argues that, to the extent that the relevant rules do not expressly provide for reimbursement, this court should defer to its interpretations of its own rules under *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 881 P2d 119 (1994).

■■ SAIF's argument implicates the construction of several DCBS rules that DCBS, acting through the WCD administrator, interpreted in its final order. We defer to an agency's interpretation of its own rules, if that interpretation is plausible, that is, consistent with their wording, their context, or any other source of law. *Id.* at 142. When an agency has the authority to adopt rules and does so, it must follow its own

[5] Conversely, in this court, SAIF apparently abandons its arguments that the DRS manager lacked authority to file exceptions under ORS 183.452, OAR 137-003-0545, ORS 9.320, and ORS chapter 180.

rules and cannot ignore them. *Aetna Casualty & Surety Co. v. Sue A. Blanton, D.C.*, 139 Or App 283, 287, 911 P2d 363 (1996).

OAR chapter 436, division 9, is entitled "Oregon Medical Fee and Relative Value Schedule." OAR 436-009-0002 provides that the "purpose of these rules is to establish uniform guidelines for administering the payment for medical services to injured workers within the workers' compensation system." OAR 436-009-0003(1) provides that "[t]hese rules shall be applicable to all services rendered on or after the effective date of these rules." OAR 436-009-0010(1), in turn, provides that "[o]nly treatment that falls within the scope and field of the practitioner's license to practice will be reimbursed under a worker's compensation claim." OAR 436-009-0040(1) provides:

> "Medical fees shall be paid at the provider's usual and customary fee or in accordance with the fee schedule whichever is less. For all MCO enrolled claims, payment of medical fees shall be at the provider's usual and customary fee or according to the fee schedule, whichever is less, unless otherwise provided by MCO contract."

In addition, OAR 436-009-0050(3) provides for reimbursement of certain "Surgery services." Paragraphs (3)(a) through (c) of that rule set forth reimbursement standards for certain surgical procedures and related services such as preoperative examinations. OAR 436-009-0050(3)(d) provides reimbursement rates for physician assistants and nurse practitioners who perform surgery-related services:

> "Physician assistants or nurse practitioners, who are not employed or paid by the physician, hospital or other facility, shall be paid at the rate of 10 percent of the surgeon's reimbursable fee for the surgical procedure(s). * * * Chart notes shall document when medical services have been provided by a physician assistant or nurse practitioner."

Next, OAR chapter 436, division 10, is entitled "Medical Services." OAR 436-010-0002 provides—identically to OAR 436-009-0002—that "[t]he purpose of these rules is to establish uniform guidelines for administering the payment for medical services to injured workers within the workers'

compensation system." OAR 436-010-0003(1) provides that "[t]hese rules * * * govern all providers of medical services licensed *or authorized* to provide a product or service pursuant to ORS Chapter 656." (Emphasis added.) OAR 436-010-0210(3) authorizes the provision of medical services by nonlicensed persons, such as Eller, under an attending physician's supervision and control. It provides:

"Attending physicians may prescribe treatment to be carried out by persons licensed to provide a medical service or by persons not licensed to provide a medical service. Those persons not licensed to treat independently or not licensed to provide a medical service, may only provide treatment prescribed by the attending physician which is rendered under the physician's direct control and supervision."

OAR 436-010-0005(25) provides that " 'Medical Service' means any medical, surgical, diagnostic, chiropractic, dental, hospital, nursing, ambulances, and other related services * * *." OAR 436-010-0005(28), in turn defines "Medical Treatment" as "services that include but are not limited to those defined in (25) of this rule; ancillary services prescribed by an attending physician pursuant to OAR 436-010-0230(3); or any services which require a physician's prescription."

The parties' dispute centers on the meaning of OAR 436-009-0050(3)(d) and OAR 436-010-0210(3) in the context of the other provisions of OAR chapter 436, divisions 9 and 10, referred to above. SAIF contends that OAR 436-010-0210(3) is inapplicable to the determination whether Eller's fees are separately reimbursable. It argues:

"[A]s the hearing officer explained, the Division 010 rules under OAR Chapter 436 pertain to the *provision* of medical services, while the Division 009 rules apply to *reimbursement* for such services. As the hearing officer correctly reasoned: 'The issue in this case is not whether Eller may provide services; it is whether the insurer is required to reimburse those services. Therefore, Division 009 applies.'

"OAR 436-009-0050(3)(d) specifies only two categories of non-physicians who, when assisting in surgeries, are eligible for separate reimbursement by insurers in workers' compensation claims—physician assistants and nurse practitioners. * * *

> "* * * [T]he WCD Administrator's decision re-wrote OAR 436-009-0050(3) by adding another class of providers—unlicensed surgical assistants—to those who may seek reimbursement for assisting in surgeries."

(Emphasis in original.) DCBS, on the other hand, asserts that OAR 436-009-0050(3)(d) is not conclusive:

> "The fact that OAR 436-009-0050(3) does not address the reimbursement rate for other, nonlicensed categories of surgical assistants does not suggest, much less compel the conclusion, that the services of those other surgical assistants are not reimbursable. Nothing in OAR 436-009-0050(3) suggests that persons who are permitted by rule to assist in surgery, but who are neither licensed physician assistants nor certified nurse practitioners, are not eligible for any reimbursement."

In his final order, the WCD administrator similarly reasoned:

> "No Division 009 rule specifically addresses reimbursement for non-physician surgical assistant services except for physician assistants and nurse practitioners. But, that does not equate to denial of reimbursement. OAR 436-010-0210 has been previously applied to determine whether disputed services are reimbursable.
>
> "Furthermore, OAR 436-010[-210](3) is not limited to non-surgical medical services. * * * The rule refers to licensed and non-licensed providers of medical services and treatment. Medical services are defined, in part, as: 'any medical, surgical, diagnostic, chiropractic, dental, hospital, nursing, ambulances, and other related services, * * *.' OAR 436-010-0005(25). Medical treatment is defined as: 'services that include but are not limited to those defined in (25) of this rule; ancillary services prescribed by an attending physician pursuant to OAR 436-010-0230(3); or any services which require a physician's prescription.' Thus, OAR 436-010-0210 applies in determining whether Ms. Eller's medical services as a CFA are reimbursable."

(Citations omitted.)

We conclude that the administrator's interpretation of the rules at issue is plausible, in light of their wording and context. OAR 436-009-0050(3) addresses reimbursement to

certain providers of surgery-related services. It does not purport to be exhaustive. To the contrary, the preamble to the rule expressly provides that "[t]he definitions, descriptions and guidelines found in CPT™ [Current Procedural Terminology, a system of uniform terminology for medical procedures and services] shall be used as guides governing the descriptions of services, except as otherwise provided in these rules. The following provisions are in addition to those provided in each section of CPT™."

Moreover, the residual rule governing reimbursement for medical fees is OAR 436-009-0040. That rule provides in part that "[m]edical fees shall be paid at the provider's usual and customary fee or in accordance with the fee schedule whichever is less." OAR 436-009-0040(1). It does not require that the "provider" be licensed. OAR 436-010-0005(26) provides that " 'Medical Service Provider' means a person duly licensed to practice one or more of the healing arts." OAR 436-010-0005(27) defines "Medical Provider" to mean "a medical service provider, a hospital, medical clinic or vendor of medical services." Those definitions are applicable to OAR 436-009-0040. *See* OAR 436-009-0005(1). Neither division 9 nor division 10 defines the unmodified word "provider," as it is used in OAR 436-009-0040. However, SAIF does not suggest, nor can we reasonably conclude, that the term as used in that rule has the same meaning as "medical service provider" and, thus, necessarily refers only to persons licensed to practice a healing art.

■ Thus, in the absence of a specifically applicable fee schedule, a nonlicensed person who was authorized to provide medical treatment under OAR 436-010-0210(3) was entitled to reimbursement for services at his or her usual or customary fee.[6] SAIF's reliance on OAR 436-009-0010(1) for its contrary view is unavailing. Although that rule prohibits payment for treatment that falls outside "the scope and field

---

[6] Neither the parties nor the administrator has given an opinion as to whether a specific CPT™ code applies to Eller's services. However, the absence of a specifically applicable code would not disentitle Eller to reimbursement. *See Southern Oregon Neurological v. EBI Companies,* 104 Or App 225, 228-29, 799 P2d 1137 (1990) (medical fees may be recovered even when no applicable CPT™ code exists); *see also* OAR 436-009-0010(4)(b) (providing that "[a]ny service not identifiable with a code number shall be adequately described by report").

of the practitioner's license," it can be reasonably understood to apply only to *licensed* treatment providers. Otherwise, it would negate that portion of OAR 436-010-0210(3) that authorizes nonlicensed persons to provide treatment under the direct supervision and control of the attending physician.

SAIF does not dispute that Eller was authorized to provide medical treatment for claimant under OAR 436-010-0210(3). Instead, it asserts that, having provided authorized treatment, she is not entitled to separate reimbursement for her services.[7] That interpretation of the agency's rules may not be wholly implausible but, at the very least, it is not the only plausible interpretation. It is reasonably avoided by applying, as the administrator did, OAR 436-010-0210(3) and OAR 436-009-0040, rather than OAR 436-009-0050(3), to determine whether and in what amount Eller is entitled to reimbursement for her services.

Affirmed.

---

[7] At oral argument, counsel for SAIF disclaimed the position that the fees for Eller's services could not be charged to SAIF, within applicable surgery fee schedules, through the surgeon's billing.