Argued and submitted June 11, 2012, affirmed September 25, 2013, petition for review denied February 28, 2014 (354 Or 837)

CASCADE PHYSICAL THERAPY,
*Petitioner,*

*v.*

HARTFORD CASUALTY INSURANCE COMPANY
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0900090H; A148032 (Control)

THERAPEUTIC ASSOCIATES, INC.,
*Petitioner,*

*v.*

HARTFORD CASUALTY INSURANCE COMPANY,
Specialty Risk Services,
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0900015H; A148033

CHEHALEM PHYSICAL THERAPY,
*Petitioner,*

*v.*

HARTFORD CASUALTY INSURANCE COMPANY,
Specialty Risk Services,
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0900016H; A148034

ERHARDT PHYSICAL THERAPY,
*Petitioner,*

*v.*

SPECIALTY RISK SERVICES
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0900107H; A148036

IMPACT PHYSICAL THERAPY,
*Petitioner,*

*v.*

HARTFORD CASUALTY INSURANCE COMPANY,
Specialty Risk Services,
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0900009H; A148037

LAURELHURST PHYSICAL THERAPY,
*Petitioner,*

*v.*

HARTFORD CASUALTY INSURANCE COMPANY,
Specialty Risk Services,
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0900085H; A148039

310 P3d 1156

Diana E. Godwin argued the cause and filed the briefs for petitioners.

Stephen F. Deatherage argued the cause for respondent Hartford Casualty Insurance Company. With him on the brief were Ronald J. Clark and Bullivant Houser Bailey PC.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Neil W. Jones waived appearance for respondent Specialty Risk Services.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Brewer, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

This case involves a medical fee dispute in which Cascade challenges the fees paid by insurer for medical services that Cascade provided to injured workers between January 2006 and May 2008.[1] Cascade seeks judicial review of a final order in which the director of the Department of Consumer and Business Services (DCBS) concluded, after a contested case hearing, that insurer was not required to pay Cascade any additional amounts for the medical services at issue.[2] On review, Cascade asserts that the director reached that conclusion based on an erroneous interpretation of OAR 436-009-0040(1) (01/01/08).[3] We conclude that the director's interpretation of OAR 436-009-0040(1) was plausible, and we therefore affirm the order.

The relevant background facts were stipulated before the agency. At the time of the medical services at issue, Cascade had an existing contract (the provider contract) with First Health Group Corporation or its successor (the PPO organization) to participate in its preferred provider panel. Under the provider contract, Cascade agreed to accept a reduction in its usual and customary fees for clients of the PPO organization. The provider contract stated that the PPO organization intended to market its agreement to "various health insurance plans, indemnity insurers and workers' compensation insurers." At the time of the medical services

---

[1] Petitioners in this consolidated case are six physical therapy providers who seek judicial review of final orders of the director of the Department of Consumer and Business Services. All of the providers are represented by the same counsel, and the cases were consolidated for argument before the department and, by consent of the parties, were consolidated on appeal. For ease of reference, throughout this opinion we treat petitioners as a single entity and refer to them as "Cascade." In addition, while we recognize that the director issued separate orders applicable to each provider, for the sake of simplicity we refer to the orders in the singular. Finally, although the providers brought their claims against Hartford Casualty Insurance Company, Specialty Risk Services, or both, we refer simply to "insurer" throughout this opinion.

[2] The director issued a final order and, later, issued a final order on reconsideration. It is the final order on reconsideration that is at issue in this case.

[3] In the order, the director observed that, because of the date that the Workers' Compensation Division's Resolution Team issued its order in this case, the applicable version of the rule was the "former, permanent version that preceded the [July 7, 2008,] temporary rule." The parties agree that that is the applicable version of the rule. As such, throughout this opinion, we refer to the version of OAR 436-009-0040 that was certified effective January 1, 2008.

in question, insurer was a client of the PPO organization; that is, it "had a valid contract with [the PPO organization] under the terms of which a percentage of, or all of, the discounted fees agreed to by [Cascade] and [the PPO organization] were made available to" insurer (the PPO contract).

Between January 2006 and May 2008, pursuant to compensable workers' compensation claims, Cascade provided reasonable, necessary, and authorized medical services to injured workers. Cascade then billed for those services at its usual and customary rate. However, insurer paid Cascade's bills at a lesser rate in accordance with the provider and PPO contracts. The differences between the amount billed by Cascade and the lesser amount paid by insurer are the basis for the dispute in this case—"whether insurer [was] authorized to discount payments to [Cascade] for billed fees based on a fee discount contract between [Cascade] and [the PPO organization]."

The Workers' Compensation Division's Resolution Team (resolution team) issued an administrative order in which it concluded that insurer had properly applied the discounts based on the provider and PPO contracts and, therefore, did not owe Cascade any additional payment. Cascade then requested a hearing.

Ultimately, the director, like the resolution team, resolved the dispute in favor of insurer, concluding that "fee discount contracts between providers and insurers were permitted" under the applicable version of OAR 436-009-0040(1). Under that rule,

"[t]he insurer must pay for medical services at the provider's usual fee or in accordance with the fee schedule whichever is less. Insurers must pay for medical services that have no fee schedule at the provider's usual fee. For all [managed care organization (MCO)] enrolled claims, the insurer must pay for medical services at the provider's usual fee or according to the fee schedule, whichever is less, unless otherwise provided by the MCO contract. Where there is no maximum payment established by the fee schedule, an insurer may challenge the reasonableness of a provider's billing on a case by case basis by asking the director to review the billing under OAR 436-009-0008. If the director

determines the amount billed is unreasonable, the director may establish a different fee to be paid to the provider based on at least one of, but not limited to, the following: reasonableness, the usual fees of similar providers, the services provided in the specific case, fees for similar services in similar geographic regions, and any extenuating circumstances."[4]

As noted, the director concluded that "fee discount contracts between providers and insurers were permitted" under the rule. He explained that "the rule does not expressly prohibit fee discount contracts. Nor does it include exclusive language, such as the word 'only.'" Furthermore, "the rule must be read in the context of its authorizing statute, ORS 656.248(2)." The "clear intent of [that] provision is to set an upper limit on what medical fees may be paid, the fee schedule." The statute, however, "deliberately does not set a minimum or a floor for medical fee payments." In the director's view,

"[s]etting maximum fees contains costs. Not setting a floor helps to contain costs, by allowing insurers and providers to negotiate fees less than the fee schedule. Permitting discount contracts allows providers to determine how much less than the fee schedule they can charge while still providing quality medical services. Enforcing fee discount contracts is consistent with the wording of the rule and the statute, and with the policies of the workers' compensation system."

In addition, the director observed,

"the rule and statute authorize payment of the provider's 'usual fee.' When a provider and insurer sign a contract authorizing an agreed-upon discount for a given service, the parties have essentially agreed on what the provider's 'usual fee' is for each covered service. The provider is therefore being paid their 'usual fee' within the meaning of the statute and the rule."

Based upon his interpretation of OAR 436-009-0040(1), the director concluded that insurer had "paid the amounts owed and [was] not required to pay any additional amounts for the bills at issue in this matter."

---

[4] It is undisputed that the PPO organization in this case is not an MCO and that the claims are not "MCO enrolled claims" as described in the rule.

On judicial review, Cascade contends that the department incorrectly interpreted OAR 436-009-0040(1) to "allow insurer[] to apply private [fee-discount contracts] to payments owed to medical providers for services to injured workers." In Cascade's view, the "amounts actually paid were less than the amounts * * * insurer was required to pay under the Oregon workers' compensation fee schedule and rates." Insurer and DCBS respond that the director has interpreted OAR 436-009-0040 as permitting the fee-discount contracts, and that interpretation is plausible and entitled to deference. We agree with insurer and DCBS.

Under ORS 183.482(8)(a), we are authorized to reverse the department's order if it was based on an erroneous interpretation of the law. We must, however, defer to an "agency's plausible interpretation of its own rule." *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994); *see also SAIF v. Donahue-Birran*, 195 Or App 173, 181, 96 P3d 1282 (2004) ("The rules in OAR chapter 436 were promulgated by the director of [DCBS] * * * and we defer to DCBS's plausible interpretation of its rules."); *SAIF v. Eller*, 189 Or App 113, 119, 74 P3d 1093 (2003) (the appellate court defers to DCBS's interpretation of its rules "if that interpretation is plausible, that is, consistent with their wording, their context, or any other source of law"). Cascade asserts that the director's interpretation of OAR 436-009-0040(1) is not plausible because it is inconsistent with the rule's text and also "exceeds the [d]irector's authority under the workers' compensation statutes and violates the provisions of ORS 656.248." As discussed below, we conclude that the director's interpretation of the rule is plausible and, therefore, entitled to deference.

As noted, OAR 436-009-0040(1) states that the insurer must pay for the medical services "at the provider's usual fee or in accordance with the fee schedule[,] *whichever is less*." (Emphasis added.) For MCO claims (not at issue here), the insurer is to pay either the usual fee or pay pursuant to the fee schedule, "whichever is less, unless otherwise provided by the MCO contract." Finally, for any billed services, if "there is no maximum payment established by the fee schedule, an insurer may challenge the reasonableness of the bill" and the

director may determine that the fee is unreasonable and may "establish a different fee to be paid to the provider." In Cascade's view, under the text of the rule, there are only three options for payment of a medical provider's bill: the insurer must pay (1) the provider's usual fee, (2) according to a fee schedule, or (3) as provided under the terms of an MCO contract. Further, according to Cascade, the rule, in context, "impliedly excludes other methods for payment to medical providers including private" contracts such as those at issue in this case.[5] The director, on the other hand, in interpreting the rule, observed that the rule does not expressly prohibit the type of contract at issue in this case, nor does it include language that excludes other payment rates. DCBS, in its brief, emphasizes that "the rule addresses *amounts* of payment"; that is, the rule sets a cap that payments to medical providers may not exceed. (Emphasis in original.) It does not, however, prohibit payment of a lesser amount pursuant to the type of contracts entered into by the parties in this case.

Initially, we observe that Cascade's interpretation of the rule in question is plausible. However, our task is not to determine whether Cascade has presented a plausible interpretation of the rule, nor is it to interpret the rule ourselves in the first instance. Instead, we must simply determine

---

[5] We note that Cascade quotes language from *Reid v. DCBS*, 235 Or App 397, 232 P3d 994 (2010), in support of its position on review. In that case, as background, we described the rule in question:

"The rules in OAR chapter 436, division 9, govern how providers of medical services to injured workers are paid under the workers' compensation statutes. Under the rules in that division prior to adoption of the temporary rule, insurers could choose to pay providers from any of three fee rate schedules: a fee schedule promulgated by the Director of DCBS, the provider's own fee schedule, or a schedule in a contract that the provider had with a qualified managed care organization (MCO). The temporary rule created a fourth option for determining payments. It allowed insurers to choose the fee that the provider was contractually obligated to charge based on *any* contract that the provider was a party to * * *."

*Id.* at 399 (emphasis in original). However, in *Reid*, we did not actually consider the interpretation of the rule in question. Instead, the case involved a challenge to the temporary rule that followed the version of OAR 436-009-0040 at issue in this case. In any event, we did not consider the merits of the parties' dispute in *Reid*. Instead, we dismissed the appeal as moot, concluding that our resolution of the case would have no practical effect on the rights of the parties. 235 Or App at 401. Accordingly, the language from *Reid* set forth above is *dicta* and plays no part in our determination whether the director's interpretation of OAR 436-009-0040(1) is plausible.

whether the director's interpretation of the rule is plausible and, therefore, entitled to deference.

As noted, we agree with DCBS and insurer, and conclude that the director's interpretation of OAR 436-009-0040(1) is not inconsistent with the rule's text and context. The rule does not contain any explicit prohibition or limitation on discount fee arrangements. Indeed, it does not expressly address circumstances, like those present in this case, where a provider has agreed to provide medical services for a discounted fee. Nor does it include limiting language providing that the expressly listed fee amounts are the only type permitted. Instead, the rule's text expresses an intent to set an upper limit on fees paid for medical services; it does not express an intent to limit the ability of parties to agree on a fee less than would be paid under the fee schedule.

Furthermore, as discussed by the director, the term "usual fee" in OAR 436-009-0040(1) does not necessarily simply refer to the amount a provider chooses to bill for a service. Rather, as interpreted by the director, when parties enter into an agreement providing that the fee for a particular medical service will be a certain (discounted) amount, those parties have provided for a lesser "usual fee" as between them. We find that understanding of the term to be plausible. Although Cascade points to OAR 436-009-0010(7), which provides general requirements for medical billings, that context does not contradict the director's interpretation. Under that rule, a provider must bill the provider's "usual fee charged to the general public." That context, however, merely indicates that providers may not bill more for medical services than they charge the general public.[6] It does not limit the term "usual fee" as used in OAR 436-009-0040(1), nor does that rule itself limit the term "usual fee" to that charged to the general public. Rather, the director's understanding of the term "usual fee" in OAR 436-009-0040(1) is consistent with the apparent intent of that rule to simply set an upper limit on the fees providers charge for medical services provided to injured workers.

---

[6] Under OAR 436-009-0010(7), the "medical provider must bill their usual fees charged to the general public. The submission of a bill by the medical provider shall serve as a warrant that the fee submitted is the usual fee of the provider for services rendered." The rule sets forth general requirements for medical billings.

Cascade also asserts that the director's interpretation of OAR 436-009-0040(1) "violates the provisions of ORS 656.248." We disagree. The rule in question was promulgated pursuant to ORS 656.248(1), which provides that "[t] he Director of the Department of Consumer and Business Services * * * shall promulgate rules for developing and publishing fee schedules for medical services provided under this chapter." Those fee schedules "shall represent the reimbursement generally received for the services provided." *Id.* Under the statute, "[m]edical fees equal to or less than the fee schedules published under this section shall be paid when the vendor submits a billing for medical services. *In no event shall that portion of a medical fee be paid that exceeds the schedules.*" ORS 656.248(2) (emphasis added). Furthermore, ORS 656.248(11) provides that fees are to be paid according to MCO contracts, where applicable: "Notwithstanding any other provision of this section, fee schedules for medical services and hospital services shall apply to those services performed by a managed care organization certified pursuant to ORS 656.260, unless provided in the managed care contract." Contrary to Cascade's contention, the statute does not prohibit the type of fee discount agreement at issue in this case. Rather, the statute expresses a clear intent to set a cap on the fees charged for medical services provided to injured workers. That is, medical fees must not exceed the amount provided in the fee schedule. Although the statute acknowledges that billed fees may be less than the fee schedule, and that a different fee schedule is applicable to MCOs, it does not address other types of fee discount arrangements (such as the type of contracts at issue in this case). It simply provides for payment of medical fees for amounts less-than-or-equal-to the fee schedule. As the director observed, the statute "does not specify how those reduced amounts are to be determined," nor does it "prohibit parties from agreeing to rates less than the fee schedule." Accordingly, we reject Cascade's assertion that the director's interpretation of OAR 436-009-0040(1) is implausible in light of ORS 656.248.

Similarly, we reject Cascade's contention that the director's interpretation of the rule is inconsistent with the statutory scheme. Cascade asserts, in part, that "ORS chapter

656 sets out an exclusive, statutory scheme for delivery of compensation to injured workers" and that only private agreements that are specifically provided for in the workers' compensation statutes are allowed.

Under ORS 656.012(2), some purposes of the statutory scheme are

"(a)  To provide, regardless of fault, sure, prompt and complete medical treatment for injured workers * * *;

"(b)  To provide a fair and just administrative system for delivery of medical and financial benefits to injured workers that reduces litigation and eliminates the adversary nature of the compensation proceedings to the greatest extent practicable;

"(c)  To restore the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable;

"* * * * *

"(e)  To provide the sole and exclusive source and means by which subject workers, their beneficiaries and anyone otherwise entitled to seek benefits on account of injuries or diseases arising out of and in the course of employment shall seek and qualify for remedies for such conditions."

In light of those purposes, ORS 656.018(1)(a) provides:

"The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom * * *."

The director's interpretation of OAR 436-009-0040(1) to allow for agreements for reduced prices on medical services is not in conflict with those purposes or with the exclusive nature of the remedies available under the workers' compensation system. The fees allowable remain subject to the upper limit provided by the fee schedules; the parties are simply permitted to agree to lower fees than might otherwise be charged. We are not persuaded by Cascade's view

that, because the statutes do not specifically address the type of contracts at issue in this case, such reduced-fee agreements are not allowed. Those agreements are consistent with the purpose (apparent in ORS 656.248) to contain the cost of medical care and they do not conflict with the scheme's stated purposes of providing sure, prompt, and complete medical treatment for injured workers, providing a fair nonadversarial system for the delivery of benefits, and providing the exclusive means by which injured workers receive remedies for injuries or conditions that arise out of or in the course of employment. Accordingly, we reject Cascade's challenge to the director's interpretation of OAR 436-009-0040(1).

In sum, we conclude that the director's interpretation of OAR 436-009-0040(1) is plausible and, thus, we are bound by it. Therefore, we conclude that the director did not err in his determination that OAR 436-009-0040(1) does not prohibit the provider and PPO contracts at issue in this case and, therefore, insurer was not required to pay Cascade additional amounts for the bills in question.

Affirmed.