Argued and submitted August 10, 2012, affirmed December 11, 2013, petition for review denied April 17, 2014 (355 Or 317)

BACK IN ACTION PHYSICAL THERAPY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800163H; A147973 (Control)

CANBY PHYSICAL THERAPY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800217H; A147974

CAPITOL PHYSICAL AND HAND THERAPY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800209H; A147975

CLACKAMAS PHYSICAL THERAPY ASSOCIATES,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800185H; A147976

HOOD RIVER PHYSICAL THERAPY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800203H; A147977


JACKSON COUNTY PHYSICAL THERAPY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800162H; A147978


KEIZER PHYSICAL THERAPY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800156H; A147979


LAURELHURST PHYSICAL THERAPY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800221H; A147980

PROACTIVE ORTHOPEDIC OF GRESHAM,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800268H; A147981


PROACTIVE ORTHOPEDIC OF OREGON CITY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800250H; A147982


TIM FOLEY PHYSICAL THERAPY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
080013H; A147983


ZOMERSCHOE PHYSICAL THERAPY,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Department of Consumer and Business Services,
*Respondents.*

Department of Consumer and Business Services
0800356H; A147984

316 P3d 324

Diana E. Godwin argued the cause and filed the briefs for petitioners.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent Department of Consumer and Business Services. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

David O. Wilson argued the cause for respondent Liberty Northwest Insurance Corporation. With him on the brief was Law Offices of Anderson & Nyburg.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Brewer, Judge pro tempore.*

ARMSTRONG, P. J.

---

* Haselton, C. J., *vice* Norby, Judge pro tempore.

**ARMSTRONG, P. J.**

This is a consolidated medical fee dispute in which petitioners, Back in Action Physical Therapy (Back in Action) and 11 other medical providers, seek review of final orders of the Department of Consumer and Business Services (DCBS) concluding that petitioners were not entitled to additional payments from Liberty Northwest Insurance Corporation (insurer) for physical therapy services provided by petitioners to injured workers under the workers' compensation system. Generally, the dispute involves whether insurer properly discounted its payments to petitioners for billed fees based on fee discount contracts between petitioners and MedRisk, Inc. (MedRisk), an "expert provider organization." Petitioners raise five assignments of error, that, as explained below, are foreclosed by our recent decision in *Cascade Physical Therapy v. Hartford Casualty Ins. Company*, 258 Or App 612, 310 P3d 1156 (2013). Accordingly, we affirm.

With one exception described below, 259 Or App at 749-50, the issues presented are the same with respect to each petitioner. For ease of reference, we describe the background facts by reference to the "control" petitioner, Back in Action, except as otherwise noted. We take those facts—which are few and undisputed—from the amended final order in that case. *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995) (unchallenged agency factual findings are the facts for purposes of judicial review).

In 2004, insurer contracted with MedRisk to arrange for the provision of rehabilitative treatment for injured workers being treated under the workers' compensation system and to process the billings for that treatment from medical providers. In 2006, MedRisk entered into a contract with Back in Action, under which Back in Action agreed to accept specified rates of payment for specified services provided to injured workers. Between January 23, 2007, and June 17, 2007, Back in Action provided treatment to an injured worker and submitted bills to insurer for that treatment. Insurer sent the bills to MedRisk and, through MedRisk, paid Back in Action at the discounted rates set out

in Back in Action's agreement with MedRisk. Back in Action requested administrative review under ORS 656.248(12),[1] which ultimately resulted in this judicial review proceeding.

On July 7, 2008, DCBS adopted a temporary rule, OAR 436-009-0040 (07/07/08). Before the adoption of the temporary rule, OAR 436-009-0040(1) (01/01/08) (the former permanent rule) provided, as pertinent:

> "The insurer must pay for medical services at the provider's usual fee or in accordance with the fee schedule whichever is less. Insurers must pay for medical services that have no fee schedule at the provider's usual fee. For all [managed care organization (MCO)] enrolled claims, the insurer must pay for medical services at the provider's usual fee or according to the fee schedule, whichever is less, unless otherwise provided by MCO contract."

The temporary rule amended subsection (1) to read:

> "*Unless otherwise provided by contract,* insurers must pay providers at the providers' usual fee, or the amount set by the fee schedule, whichever is less."

OAR 436-009-0040(1) (07/07/08) (emphasis added). Thus, the temporary rule purported to enforce fee discount contracts, like those at issue in this case, in the calculation of medical provider fees. The temporary rule was in effect from July 7, 2008, through January 2, 2009, and applied to "[a]ll payments made under a contract with a medical provider, regardless of the date of service." OAR 436-009-0003(1) (07/07/08).

Applying the temporary rule to the dispute involving Back in Action, the Resolution Team of the Workers' Compensation Division entered an Administrative Order concluding that insurer had correctly reduced the payment to Back in Action according to the contract and, therefore, was not liable for the additional amount claimed by Back

---

[1] ORS 656.248(12) provides:

"When a dispute exists between an injured worker, insurer or self-insured employer and a medical service provider regarding either the amount of the fee or nonpayment of bills for compensable medical services, notwithstanding any other provision of this chapter, the injured worker, insurer, self-insured employer or medical service provider may request administrative review by the director. The decision of the director is subject to review under ORS 656.704."

in Action.[2] After a hearing, an administrative law judge (ALJ) issued a proposed and final order concluding that the temporary rule could not be applied retroactively to this case because doing so would violate ORS 183.335(6)(a),[3] that the former permanent rule did not authorize payments to be discounted under individual contracts, and, therefore, that insurer was liable for additional payment to Back in Action equal to the discount taken under the agreement between Back in Action and MedRisk. The director disagreed with the conclusion reached by the ALJ and, in an amended final order, affirmed the Administrative Order applying the temporary rule allowing the contract discounts. Back in Action seeks judicial review of the amended final order.[4] ORS 656.248(12); ORS 656.704(2)(a); ORS 183.480 - 183.497.

One petitioner, Jackson County Physical Therapy, is in a slightly different procedural posture. In that case, one of the challenged administrative orders was issued after the temporary order had expired; thus, as the final order concludes, the controlling rule as to that order was the former

---

[2] The original order, issued on May 13, 2008, before the director adopted the temporary rule, concluded that insurer had incorrectly reduced payment and was liable for the full amount billed by Back in Action. The order was later abated to consider the temporary rule, and the order was reissued on August 8, 2008.

[3] ORS 183.335(6)(a) provides that a temporary rule may not be effective longer than 180 days.

[4] For the consolidated agency record, the parties stipulated, among other things, that (1) at the time the disputed medical services were provided, each petitioner had a separate existing contract with MedRisk, the terms of which (except for the date signed) were identical to the terms of the contract between MedRisk and Back in Action, and insurer had a contract with MedRisk; (2) the medical services provided by each petitioner to injured workers under the MedRisk contract were for compensable workers' compensation claims; (3) at the time, MedRisk was not certified as a Managed Care Organization (MCO) under Oregon workers' compensation laws and rules; (4) each petitioner billed its usual and customary fees for the medical services and, pursuant to the contracts between MedRisk and petitioners, insurer, through MedRisk, paid petitioners' bills in an amount that was less than the lesser of the amount billed or the maximum payable under the medical fee and payment schedule then in effect; (5) "[e]ach petitioner filed fee disputes with the Workers' Compensation Division seeking to recover the difference between what [insurer], through MedRisk, paid to the petitioner and the amount that petitioner would have been paid absent the application of the discount rates contained in the contract between MedRisk and the petitioner;" and (6) all of the medical services subject to the fee disputes were provided, billed, and paid before July 7, 2008. Thus, although the dates of service, amounts billed, and amount of recovery sought are different for each petitioner, for purposes of our review, the relevant circumstances are identical.

permanent rule. The director concluded that enforcing fee discount contracts was allowed under the former permanent rule as well.

As noted, petitioners raise five assignments of error on review. Specifically, they contend that the director erred in (1) retroactively applying the temporary rule to the payment of medical services provided and billed in 2007;[5] (2) adopting the temporary rule, because it exceeds the agency's authority under ORS chapter 656 (the workers' compensation statutes); (3) interpreting the former permanent rule to allow insurer to discount payments to Jackson County Physical Therapy; (4) "finding [that] MedRisk did not actively manage medical care of injured workers on [insurer's] behalf"; and (5) denying petitioners attorney fees and penalties under ORS 656.262(2) and (11).

As mentioned, the resolution of petitioners' assignments of error are controlled by our decision in *Cascade Physical Therapy*. Similar to this case, the dispute in *Cascade Physical Therapy* was whether the administrative rule allowed insurers to discount payments to physical therapy providers based on a fee discount contract between those providers and a preferred provider organization (PPO), which also had a contract with insurers. As relevant here, the difference between *Cascade Physical Therapy* and this case is that the former involved only the interpretation of the *former permanent rule*, OAR 436-009-0040(1) (01/01/08), rather than the temporary rule, OAR 436-009-0040(1) (07/07/08). In *Cascade Physical Therapy*, the director had interpreted the former permanent rule to allow the insurers to apply those private fee discount contracts to payments owed by them to medical providers. 258 Or App at 616; *see also id.* at 615 n 3. We upheld the director's interpretation as plausible, reasoning, in part, that "the rule's text expresses an intent to set an *upper* limit on fees paid for medical services * * * not * * * an intent to limit the ability of parties to agree on a fee less than would be paid under the fee schedule." *Id.* at 620 (emphasis added).

---

[5] As they did below, petitioners argue that applying the temporary rule retroactively makes it effective for more than 180 days in violation of ORS 183.335(6)(a).

We also rejected the providers' argument that the director's interpretation of the rule violates ORS 656.248, in particular subsections (2) and (11). ORS 656.248(2) provides:

"Medical fees equal to or less than the fee schedules published under this section shall be paid when the vendor submits a billing for medical services. In no event shall that portion of a medical fee be paid that exceeds the schedules."

Subsection (11) provides:

"Notwithstanding any other provision of this section, fee schedules for medical services * * * shall apply to those services performed by a managed care organization certified pursuant to ORS 656.260, unless otherwise provided in the managed care contract."

Noting that, under subsection (11), "fees are to be paid according to MCO contracts, where applicable," we reasoned:

"Contrary to Cascade's contention, [ORS 656.248] does not prohibit the type of fee discount agreement at issue in this case. Rather, the statute expresses a clear intent to set a cap on the fees charged for medical services provided to injured workers. That is, medical fees must not exceed the amount provided in the fee schedule. Although the statute acknowledges that billed fees may be less than the fee schedule, and that a different fee schedule is applicable to MCOs, it does not address other types of fee discount arrangements (such as the type of contracts at issue in this case). It simply provides for payment of medical fees for amounts less-than-or equal-to the fee schedule. As the director observed, the statute 'does not specify how those reduced amounts are to be determined,' nor does it 'prohibit parties from agreeing to rates less than the fee schedule.'"

*Cascade Physical Therapy*, 258 Or App at 621. Accordingly, we affirmed the director's orders that the insurers properly discounted the billed fees based on the contracts between the providers and the PPOs, and, therefore, it was not required to pay any additional amounts for the services billed by the providers. *Id.* at 623.

Petitioners' third assignment of error in this case presents the identical issue that we rejected in *Cascade Physical Therapy*—that is, that the former permanent rule does not allow insurers to apply fee contract discounts to

payments to medical providers. We thus reject that assignment of error without further discussion.

In a similar vein, petitioners' first two assignments of error are also foreclosed by *Cascade Physical Therapy.* That is so because, even if petitioners are correct that the director erred in applying (first assignment) or adopting (second assignment) the temporary rule, as just discussed, the same result would obtain under the former permanent rule. There is no question that the former permanent rule would be controlling if the temporary rule were determined to be inapplicable or invalid.[6] And, as we held in *Cascade Physical Therapy,* 258 Or App at 623, the application of fee discount contracts is permitted under that version of the rule as well. Accordingly, petitioners' first two assignments of error are also without merit.

We turn to petitioners' fourth assignment of error, in which they contend that "[t]he [d]irector erred in finding [that] MedRisk did not actively manage medical care of injured workers on [insurer's] behalf." That assignment is ultimately unavailing for two reasons.

First, although petitioners state that the asserted error challenges a legal conclusion that we review for legal error, that is incorrect. They argue that the director erred in determining that

> "'[t]here has been no proof here that insurer or TPA actually are regulating care rather than simply bargaining over the price of services.' The specific provisions of the contracts between MedRisk and [insurer] and between MedRisk and [petitioners], together with the Explanation of Review, substantiate [petitioners'] position that MedRisk actively managed worker care and [insurer] intended that MedRisk do so on its behalf."

(Footnote and record citations omitted.) That raises a substantial evidence challenge. *See* ORS 183.482(8)(c). Petitioners contend that "the [d]irector unreasonably ignored

---

[6] In their third assignment of error, petitioners agree with the director's conclusion that, in the absence of the temporary rule, the former permanent rule applied to the Jackson County Physical Therapy orders at issue in that assignment. Although in those orders, the temporary rule had *expired*, we see no reason why the same would not be the case if the temporary rule were to be held invalid.

evidence [that insurer] utilized MedRisk to reduce payment to [petitioners] by actively managing the care of injured workers." Petitioners point to various provisions in the contracts between MedRisk and insurer and MedRisk and petitioners, noting that they mirror the statutory requirements for MCOs. In short, petitioners contend that insurer, by contracting with MedRisk, "sought to use the lower payment benefits of an MCO without using an Oregon certified MCO."

Petitioners argue that the director ignored those contractual provisions and, instead, labeled MedRisk as a third party administrator (TPA), which is defined as "a service company [that] processes claims for an insurer or self-insurer under the conditions prescribed in ORS 731.475(3) and ORS 656.455(1)." OAR 436-055-0005(8). According to petitioners, the terms of MedRisk's contracts, which describe its purpose as "manag[ing] a network of physical therapy and occupational therapy providers," contradict the director's conclusion that MedRisk was a TPA rather than an MCO.

The problem with petitioners' argument is that the director did not ignore the provisions of MedRisks' contracts. On that issue, the director concluded in full:

> "Provider argues [that] allowing fee discount agreements is comparable to improperly allowing insurers to act as PPOs or MCOs. Provider similarly argues [that MedRisk] was improperly acting as an MCO without certification. A contract that sets a price for services does not create a PPO or MCO. MCO's and PPO's regulate the provision of care beyond simply setting the price for services. See ORS 656.245(4)(a); 656.260. *There has been no proof here that insurer or [MedRisk] actually are [sic] regulating care rather than simply bargaining over the price of services.*
>
> "Provider contends that the contract between itself and [MedRisk] is not valid because [MedRisk] was acting as an uncertified MCO. *The only evidence in this case concerns the payment of fees. Regardless of the terms of the contract, there is no proof in this case that [MedRisk] attempted to manage care concerning the patient treatment that gave rise to this fee dispute.*"

(Emphasis added.) Thus, it is apparent that the director did not ignore the evidence petitioner identifies; rather it found that, "*regardless*" of those contract provisions, there was no

evidence that MedRisk attempted to manage the care of patients. As it emphasized, the "only" evidence in the case concerned the payment of fees.

The second, and more fundamental, problem with petitioners' argument is that it does not explain why, even if the director erred in failing to find that MedRisk was improperly acting as an MCO without certification, insurer was nonetheless prohibited from discounting its payments to petitioners based on those non-MCO contracts. And, given our conclusion in *Cascade Physical Therapy* that ORS 656.248 does not prohibit an insurer from discounting payments to medical providers under a contract other than an MCO contract, 258 Or App at 621, that position is indefensible. In other words, even if the contract provisions petitioners identify could be considered evidence that MedRisk was actively managing care (an issue that we do not decide), there is no relief available to petitioners in this *fee dispute*.

Finally, petitioners assert that the director erred in not assessing statutory penalties and attorney fees against insurer. In light of our conclusion that the director did not err in concluding that insurer was not liable for any additional payments to petitioners, there is no basis for an award of attorney fees or a statutory penalty.

Affirmed.