Argued and submitted June 5, 2014, affirmed March 11, 2015

In the Matter of the Compensation of
Juan L. Godinez, Claimant.

Juan L. GODINEZ,
*Petitioner,*

*v.*

SAIF CORPORATION
and Troy Marsh, Inc.,
*Respondents.*

Workers' Compensation Board
1200796; A152746

346 P3d 530

R. Adian Martin argued the cause and filed the briefs for petitioner.

David L. Runner argued the cause and filed the brief for respondents.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

## DEVORE, J.

Claimant seeks review of an order by the Workers' Compensation Board (board) affirming an order of an administrative law judge (ALJ). The ALJ upheld an order on reconsideration by the Appellate Review Unit (ARU) of the Workers' Compensation Division of the Department of Consumer and Business Services (DCBS) rejecting claimant's request for an award of compensation including an impairment value for a chronic condition significantly limiting claimant's repetitive use of his left shoulder. On review for legal error, we affirm. *See* ORS 183.482(8)(a); ORS 656.298(7) (judicial review).

The relevant facts are undisputed. While working as a siding installer, claimant injured his left shoulder when he fell off of an extension ladder. He underwent surgery, and the post-operative diagnosis was "traumatic instability." A work capacity evaluation noted reduced motion and strength in the shoulder and, based on those findings, limited claimant's left arm overhead reaching to a weight limit of 15 pounds and limited siding installation to below head level. The evaluation stated that claimant could not meet the demands of his regular job. An independent medical examination, performed the same day, resulted in similar findings, except for somewhat greater shoulder motion. The attending physician, Dr. Carrie Ware, concurred in both exams and noted that her conclusions regarding range of motion were more consistent with the work capacity evaluation.

SAIF issued a notice of closure with findings based on the work capacity evaluation. The accepted conditions for the left-shoulder injury included anterior dislocation, non-displaced glenoid rim fracture, type II SLAP lesion, and Hills-Sachs lesion. Impairment values were given for range of motion and strength loss, but no chronic condition impairment value was awarded.

Claimant requested reconsideration of the notice by the ARU. In the request, claimant included a clarification report from Ware. Ware was asked, "Does the patient have a significant limitation in repetitive use [of] his left arm above chest level?" Ware answered yes, and wrote, "Should not lift materials exceeding 20 lbs above shoulder level with

left arm." The parties did not dispute Ware's impairment findings.

In the order on reconsideration, the ARU affirmed the whole person impairment value and increased the work disability to 21 percent. The ARU, however, did not award the five percent "chronic condition impairment value" provided by OAR 436-035-0019(1). Under that rule, a claimant is entitled to a chronic condition impairment value "when a preponderance of medical opinion establishes that, due to a chronic and permanent medical condition, the worker is *significantly limited in the repetitive use of* [a listed body part]." OAR 436-035-0019(1) (emphasis added). In its order, the ARU determined:

> "The attending physician clarified the worker was limited in repetitive use over the shoulder only. Chronic condition impairment must include the worker's overall conditions/motions and not just one motion. Accordingly, the clarification does not meet the minimum threshold for rating chronic condition impairment under OAR 436-035-0019(1) and OAR 436-035-0007(13)."

Claimant requested a hearing before an ALJ, who affirmed the order on reconsideration. The ALJ determined that Ware's explanation did not "satisfy the rule's requirement of a significant limitation in repetitive use. The inability to lift more than 20 pounds above shoulder level is not the same thing as a significant limitation in repetitive use of the shoulder."

Claimant appealed from the ALJ's order to the board. The board affirmed the order. The board distinguished claimant's case from *Lynette M. Miller*, 58 Van Natta 2881 (2006), where it had determined that a chronic condition impairment value was appropriate where the medical arbiter had concluded that the claimant was "significantly limited in her ability to repetitively use her left shoulder to lift and transfer patients/weight due to her accepted diagnosis of tendonitis of that shoulder." *Id.* at 2884. The board explained that, in *Miller*, it interpreted the arbiter's additional explanation about the use of the claimant's left shoulder as an example of the limitation on the body part, not the only limitation on the shoulder's use. By contrast, the board

explained, Ware "specifically qualified the limitation on repetitive use" to lifting more than 20 pounds above shoulder level. The board concluded, "[b]ecause the limitation is qualified in this manner, we find it insufficient to establish entitlement to a 'chronic condition' impairment value."

Claimant now petitions for judicial review in this court and argues that both the ARU and the board have misinterpreted OAR 436-035-0007. Claimant contends that no deference is owed to the ARU's interpretation of the chronic condition impairment rule because the ARU did not "expressly define the terms of the administrative rule." Claimant also notes that we are not obligated to defer to the board's interpretation of the rule—which described claimant's limitation as "qualified"—because the board is not part of the Workers' Compensation Division, the agency that promulgated the rule. Therefore, claimant asks us to interpret the rule without deference and to apply the plain and ordinary meaning of the rule's terms. Under such an interpretation, claimant argues, a chronic condition impairment value should be awarded where there is "a noticeable limit on using a 'body part' over and over again."

SAIF argues that, because the ARU is the "authorized representative" of the Director of DCBS, its interpretation of the rule is entitled to deference.[1] SAIF reasons that the ARU interpreted the rule in the process of applying it to claimant's case, and contends that we should uphold its "plausible interpretation" of the rule, given that it is not "inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law[.]" *Don't Waste Oregon Com. v. Energy Facility Siting,* 320 Or 132, 142, 881 P2d 119 (1994).

As explained below, we agree that the ARU did interpret DCBS's chronic-condition rule in the course of

---

[1] SAIF also contends that claimant's argument concerning the interpretation of the rule was not adequately preserved below, because (1) claimant did not develop sufficient medical evidence that would support his interpretation of the rule, (2) claimant did not exhaust administrative remedies by presenting his proposed interpretation of the rule to the ARU on reconsideration, and (3) claimant did not provide an alternative interpretation of the rule until he filed his reply brief with the board. We conclude that the preservation requirements of ORAP 5.45 are satisfied.

applying it to claimant's case, and, because its interpretation is plausible, it is entitled to deference. ARU's interpretation is not inconsistent with the wording of the rule or any other source of law. We conclude that the board applied the ARU's interpretation in its order and that its application was supported by substantial evidence.

Agencies are permitted to "determine whether the standard established in a rule has been met in a particular instance by interpreting the rule in the course of applying it." *DeLeon, Inc. v. DHS*, 220 Or App 542, 548, 188 P3d 354 (2008). When that is the case, we defer to the agency's plausible interpretation, "including an interpretation made in the course of applying the rule[.]" *Id.* Here, the ARU was asked to determine whether claimant had met the standard for a chronic condition impairment award as set out in OAR 436-035-0019. The rule requires that the "worker is significantly limited in the repetitive use of [a listed body part]." In applying that standard to claimant's case in its order on reconsideration, the ARU explicitly interpreted the rule to require impairment of the worker's "overall conditions/ motions and not just one motion." *See Gienger v. Dept. of State Lands*, 230 Or App 178, 186-87, 214 P3d 75 (2009), *rev den*, 348 Or 13 (2010) (agency interpreted rule in the course of applying it by recounting, in the order, two of its own regulatory definitions and discussing how they applied, in concert, to the facts of the case); *SAIF v. Donahue-Birran*, 195 Or App 173, 180-83, 96 P3d 1282 (2004) (in applying an ambiguous rule that had "two possible meanings," the ARU implicitly interpreted the rule as having one of those meanings, and the interpretation was entitled to deference). *But see SAIF v. Miguez*, 249 Or App 388, 395, 277 P3d 601 (2012) (the ARU did not interpret a rule by simply applying it to facts without any explanation). Therefore, the ARU's order on reconsideration constitutes an interpretation of OAR 436-035-0019(1).

The rules in OAR chapter 436 were promulgated by the Director of DCBS, *see* OAR 436-001-0001, and we defer to DCBS's plausible interpretation of its rules. *SAIF v. Eller*, 189 Or App 113, 119-20, 74 P3d 1093 (2003). That deference extends to the ARU, which is the delegate of the director and has the authority to determine the proper application

of OAR 436-035-0019. *Donahue-Birran*, 195 Or App at 181; *Miguez*, 249 Or App at 395. The deference owed to the ARU's interpretation is not negated by the ALJ's or the board's later application of the ARU's interpretation in affirming the order on reconsideration. *Donahue-Birran*, 195 Or App at 182-83 ("it is immaterial that the ALJ and board did not promulgate the rule in question" because "they sustained a plausible interpretation of the rule by an agent of the promulgating entity"). Although the board used different terminology in affirming ARU's order—speaking in terms of "qualified" limitations on repetitive use of a body part—the board nonetheless applied the ARU's interpretation of the rule in determining that the "qualified" nature of claimant's limitation did not entitle him to a chronic condition impairment value.

We agree that ARU's interpretation is plausible. "We defer to the agency's plausible interpretation of its own rule, including an interpretation made in the course of applying the rule, if that interpretation is not inconsistent with the wording of the rule, its context, or any other source of law." *DeLeon, Inc.*, 220 Or App at 548 (citing *Don't Waste Oregon Com.*, 320 Or at 142). To determine whether an agency's interpretation is plausible, we use the same interpretive framework for administrative rules that we use for statutes. That is, we consider "the text of the rule itself, together with its context, which includes other provisions of the same rule, other related rules, the statute pursuant to which the rule was created, and other related statutes." *Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525, 533, 185 P3d 446 (2008).

To qualify for a chronic condition impairment value, OAR 436-035-0019 provides that the preponderance of medical evidence must establish that the worker "is significantly limited in the repetitive use of [a listed body part]." Both parties urge us to consider the plain and ordinary meaning of "significant" and "repetitive" when interpreting that phrase. The definition of "significant" includes "having meaning" and "having or likely to have influence or effect"; it is synonymous with "important," "weighty," and "notable." *Webster's Third New Int'l Dictionary* 2116 (unabridged ed 2002). "Repetitive" is redundantly defined as "containing

repetition." *Id.* at 1924-25. The plain meaning of those terms does not demonstrate that the interpretation of the rule either by claimant or the ARU is unambiguously or necessarily correct. However, when determining the plausibility of an interpretation by the ARU, the mere fact that a claimant's interpretation is also plausible does not demonstrate that the ARU's interpretation is not. *See DeLeon, Inc.,* 220 Or App at 548 ("[I]t is settled law that a petitioner's plausible alternative construction of an agency rule does not mean that the agency's own construction is implausible."). Claimant has not shown that the ARU's interpretation is *not* plausible or inconsistent with the text of the rule, its context, or any other source of law.

SAIF also presents materials from the rulemaking history to support its interpretation. A prior version of the rule required "that the worker is unable to repetitively use" a body part due to a chronic and permanent medical condition. *Former* OAR 436-35-010(6) (1992); *former* OAR 436-35-320(5) (1992). That rule was interpreted to mean that a worker was entitled to a chronic condition impairment award if there was "at least a partial loss of ability to use the body part." *Weckesser v. Jet Delivery Systems,* 132 Or App 325, 327, 888 P2d 127 (1995) (quoting *Donald E. Lowry,* 45 Van Natta 1452 (1993)). When the agency amended the rule in 1996, it changed the text to require a "significant limitation" in the use of a body part, explaining that the amendment was necessary "to curb some of the overuse of this award[.]" WCD Admin Order 96-051, Ex C, 11. When the rule was amended again in 2004, DCBS explained:

> "A previous legal decision determined the interpretation of the existing unscheduled rule simply required a partial loss of ability to repetitively use the body part. Consequently, by requiring a significant limitation in the ability to repetitively use a body part * * *, a higher threshold for receiving an award of impairment was established."

WCD Proposed Disability Rating Standards, *Summary of Testimony and Agency Responses, xiii* (July 15, 2004). SAIF argues that adopting claimant's proposed interpretation of the rule—requiring only a "noticeable" limitation on use—would ignore the agency's intent to exclude awards for a "partial" loss of ability to use the body part. The

history of the rule strengthens the plausibility of the ARU's interpretation.

Finally, we conclude that the board's order is supported by substantial evidence. The only relevant medical evidence regarding claimant's use of his shoulder came from Ware, who concluded that claimant should not lift materials exceeding 20 pounds over his shoulder. That was evidence from which the board could find that claimant did not have a "limitation on his overall motions/conditions." The board's finding in that respect is supported by substantial evidence.

Affirmed.