Argued and submitted January 8, 2021, affirmed October 19, 2022

In the Matter of the Compensation of
Timothy Leak, Claimant.
DESCHUTES COUNTY,
*Petitioner,*

*v.*

Timothy LEAK,
*Respondent.*

Workers' Compensation Board
1804591; A172526

519 P3d 1277

Employer Deschutes County seeks judicial review of an order of the Workers' Compensation Board that awarded claimant benefits for impairment on his compensable claim for post-traumatic stress disorder (PTSD), contending that the board erred in classifying claimant's impairment level as Class 2 under OAR 436-035-0400, and also erred in classifying claimant's job at the time of injury as "deputy sheriff" for purposes of determining claimant's work disability benefit. *Held*: Substantial evidence supports the determination by the Workers' Compensation Board that claimant's level of impairment for PTSD is properly categorized as Class 2 and that his job at the time of injury was "deputy sheriff" for purposes of determining claimant's work disability benefit.

Affirmed.

Rebecca A. Watkins argued the cause for petitioner. Also on the briefs was Sather, Byerly & Holloway, LLP.

Julene M. Quinn argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Affirmed.

## POWERS, J.

Employer Deschutes County seeks judicial review of an order of the Workers' Compensation Board that awarded claimant benefits for impairment on his compensable claim for post-traumatic stress disorder (PTSD), contending that the board erred in classifying claimant's impairment level as Class 2 under OAR 436-035-0400, and also erred in classifying claimant's job at the time of injury as "deputy sheriff" for purposes of determining claimant's work disability benefit. We review the board's interpretation of the applicable statutes and administrative rules for error of law, ORS 183.482(8)(a), and the board's findings for substantial evidence under ORS 183.482(8)(c). As explained below, we affirm the board's determination of claimant's level of impairment. We further conclude that the board's determination of work disability is supported by substantial evidence. Accordingly, we affirm.

Claimant, who worked for employer as a deputy sheriff, was on administrative leave for a disciplinary matter when he began to suffer symptoms of PTSD. Claimant attributed his symptoms to traumatic experiences in his work as a patrol officer for employer. Employer ultimately accepted the claim.

Claimant's symptoms improved with therapy and medication. Claimant became medically stationary, and his physician, Dr. Thibert, released him for a "trial" of light work. Claimant, however, did not return to work, because he retired while on administrative leave. Employer closed the claim with an award of temporary disability, but without an award of permanent disability benefits, based on a determination that claimant's residual symptoms from PTSD were within the Class 1 category, as described in OAR 436-035-0400(5)(a) (2018), which provides for an impairment rating of zero.[1]

---

[1] OAR 436-035-0400(3) (2018) describes the physician's evaluation in determining a worker's impairment as a result of work-related mental illness and provides:

"The physician describes permanent changes in mental function in terms of their [e]ffect on the worker's activities of daily living (ADLs), as defined in OAR 436-035-0005(1). Additionally, the physician describes the [e]ffect on

Claimant sought reconsideration with the Appellate Review Unit (ARU) but did not request a medical arbiter. Thibert, claimant's attending physician, provided opinions that, at the time claimant became medically stationary, he had "little to no permanent residual symptoms day to day in his personal life with little to no treatment necessary," but "may need ongoing medications and occasional therapy to address waxing and waning of his [PTSD] symptoms." Thibert opined that claimant's residual symptoms were "appropriately classified" as Class 1. Thibert further opined that, if claimant were to return to the patrol job he held

---

social functioning and deterioration or decompensation in work or work-like settings.

"(a) Social functioning refers to an individual's capacity to interact appropriately, communicate effectively, and get along with other individuals.

"(b) Deterioration or decompensation in work or work-like settings refers to repeated failure to adapt to stressful circumstances, which causes the individual either to withdraw from that situation or to experience exacerbations with accompanying difficulty in maintaining ADL, social relationships, concentration, persistence, pace, or adaptive behaviors."

OAR 436-035-0400(5) describes the "classes" of impairment for loss of function attributable to work-related mental illness and provides, in part:

"Loss of function attributable to permanent symptoms of affective disorders, anxiety disorders, somatoform disorders, and chronic adjustment disorders is rated under the following classes, with gradations within each class based on the severity of the symptoms/loss of function:

"(a) Class 1: 0% when one or more of the following residual symptoms are noted:

"(A) Anxiety symptoms: Require little or no treatment, are in response to a particular stress situation, produce unpleasant tension while the stress lasts, and might limit some activities.

"(B) Depressive symptoms: The ADL can be carried out, but the worker might lack ambition, energy, and enthusiasm. There may be such depression-related, mentally-caused physical problems as mild loss of appetite and a general feeling of being unwell.

"* * * * *

"(b) Class 2: minimal (6%), mild (23%), or moderate (35%) when one or more of the following residual symptoms/loss of functions are noted:

"(A) Anxiety symptoms: May require extended treatment. Specific symptoms may include (but are not limited to) startle reactions, indecision because of fear, fear of being alone, and insomnia. There is no loss of intellect or disturbance in thinking, concentration, or memory.

"(B) Depressive symptoms: Last for several weeks. There are disturbances in eating and sleeping patterns, loss of interest in usual activities, and moderate retardation of physical activity. There may be thoughts of suicide. Self-care activities and personal hygiene remain good."

before going on administrative leave, his symptoms would likely return to the Class 2 level.[2]

The ARU explained that an evaluation of a claimant's impairment is limited to consideration of symptoms that the claimant is experiencing at the time of claim closure, *see* ORS 656.283(6) ("Evaluation of the worker's disability by the Administrative Law Judge shall be as of the date of issuance of the reconsideration order pursuant to ORS 656.268."), and that, in determining claimant's impairment, it could not consider impairment that Thibert opined claimant would likely experience if claimant returned to a patrol job. Accordingly, the ARU upheld the notice of closure.[3]

Claimant requested a hearing, asserting that the likelihood that claimant's symptoms would become worse if he returned to work is a part of claimant's current disability and therefore should be considered in an evaluation of his impairment. The administrative law judge (ALJ) upheld the ARU's order, reasoning that the ARU was entitled to

---

[2] Thibert signed a concurrence letter from employer's attorney, agreeing that claimant has remained medically stationary since March 17, 2017. He also endorsed the following statement:

"Your opinion regarding permanent impairment attributable to the PTSD is also unchanged, although you qualified your response. [Claimant] has little residual symptoms as long as he has not returned to his job with Deschutes County Sheriff's Office (DCSO). There has been little to no permanent residual symptoms day to day in his personal life with little to no treatment necessary, and even his flare-up that was discussed in your December, 2017 chart note was related to interactions with DCSO. If he does not return to his former position with DCSO, his residual symptoms are appropriately classified as Class 1. If he returns to, and remains at, his job-at-injury with DCSO, you strongly suspect he would have residual symptoms more in the category of Category 2, mild or moderate."

Thibert also signed a concurrence letter, prepared by claimant's attorney, in which he agreed that, if claimant were to return to his job at injury, "he would likely suffer deterioration or decomposition of his residual PTSD symptoms 'with accompanying difficulty in maintaining ADLs, social relationships, concentration persistence, pace, or adaptive behaviors.'"

[3] The ARU explained:

"[T]hese rules [do] not allow an impairment value for preventative or precautionary limitations based on a medical opinion that the causation for such a limitation is to prevent the future possibility or 'risk' of further injury. Rather, permanent impairment is established based on the worker's condition at the time of claim closure and issuance of the reconsideration, not medical evidence of a speculative nature for prevention of further injury."

deference on its plausible interpretation of OAR 436-035-0400 that impairment does not include symptoms that do not exist at the time of claim closure. The ALJ further concluded, based on an independent evaluation of the record, that claimant had not met his burden to prove that his symptoms as of the date of the reconsideration order met the criteria of Class 2.[4]

The board reversed the ALJ's order. The board reasoned that, under OAR 436-035-0400(3), an evaluation of claimant's impairment requires a consideration of whether claimant would experience "[d]eterioration or decompensation in work or work-like settings." The board concluded that Thibert's opinion supported findings that claimant had experienced symptoms within the Class 2 category, including insomnia and a loss of interest in activities, and that, if he returned to his former patrol job, claimant would continue to experience those symptoms and "his PTSD symptoms would deteriorate or decompensate in work or work-like setting." The board did not view Thibert's opinion as speculative but, rather, "analogous to a physical limitation imposed by an attending physician on an injured claimant." The board determined that claimant's impairment fell within Class 2 and awarded benefits accordingly.

Employer seeks judicial review. In its first assignment, employer contends that the board's order, specifically its conclusion that an evaluation of impairment includes consideration of possible worsened symptoms if claimant were to return to his former patrol job, depends on an unreasonable construction of OAR 436-035-0400 and, further, that the board erred in failing to defer to the ARU's plausible construction of that rule. Employer raised that issue before the board, and the board explained that the ARU's order was not a construction of the administrative rule but an interpretation of the evidence. Claimant argues that the board correctly understood that the ARU's order was based on its interpretation of the medical evidence, and that the board correctly determined, on its *de novo* review, that claimant is entitled to impairment at the Class 2 level.

_____

[4] The ALJ noted that impairment is established based on objective findings of the attending physician at the time of claim closure.

OAR 436-035-0400 (2018) was promulgated by the Workers' Compensation Division (WCD) of the Department of Consumer and Business Services, of which the ARU is a part. Employer is correct that the ARU's plausible interpretation of a WCD rule is entitled to deference. *Don't Waste Oregon Committee v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) (explaining that, under ORS 183.482(8)(a), a reviewing court will defer to an agency's interpretation of its own administrative rule if that interpretation is plausible); *Godinez v. SAIF*, 269 Or App 578, 582, 346 P3d 530 (2015) (explaining that deference to an agency's plausible interpretation of its own rules includes "an interpretation made in the course of applying the rule, if that interpretation is not inconsistent with the wording of the rule, its context, or any other source of law"). Thus, the first issue that we address is whether, as the ALJ reasoned, the ARU's order provided a plausible interpretation of OAR 436-035-0400 that was entitled to deference or, as the board reasoned, the ARU merely interpreted the evidence.

We begin our analysis with ORS 656.214(1)(c), which provides that a worker's permanent partial disability is "[p]ermanent impairment resulting from the compensable industrial injury or occupational disease." ORS 656.214(1)(a), in turn, defines "impairment" to mean "the loss of use or function of a body part or system due to the compensable industrial injury." Thus, the determination of permanent partial disability requires a determination of a worker's permanent impairment as a result of the injury or occupational disease, which, in this case, is PTSD, a mental illness.

OAR 436-035-0400(3) (2018) describes the determination of impairment resulting from a compensable mental illness. It requires the physician to identify the worker's "permanent changes" as a result of work-related mental illness:

"The physician describes permanent changes in mental function in terms of their [e]ffect on the worker's activities of daily living (ADLs), as defined in OAR 436-035-0005(1). Additionally, the physician describes the [e]ffect on social functioning and deterioration or decompensation in work or work-like settings.

"(a)   Social functioning refers to an individual's capacity to interact appropriately, communicate effectively, and get along with other individuals.

"(b)   Deterioration or decompensation in work or work-like settings refers to repeated failure to adapt to stressful circumstances, which causes the individual either to withdraw from that situation or to experience exacerbations with accompanying difficulty in maintaining ADL, social relationships, concentration, persistence, pace, or adaptive behaviors."

In directing the physician to evaluate "permanent changes," OAR 436-035-0400(3) (2018) does not address merely the worker's symptoms at the time of claim closure. Rather, the subsection requires an evaluation of the worker's permanent condition as of the time of closure, specifically including the effects of the permanent changes on activities of daily living and on social functioning and deterioration or decompensation in work or work-like settings. Thus, even if a person is not working at the time of claim closure, that evaluation still encompasses, as Thibert concluded, whether, if the worker were to be exposed to work or a work-like setting, the worker would experience deterioration or decompensation.

As we understand the ARU's reason for disregarding Thibert's opinion, it took the view that OAR 436-035-0400(3) (2018) requires an evaluation of only current symptoms. The ARU's order did not explicitly provide that it was interpreting OAR 436-035-0400 (2018); however, we understand the ARU's explanation to be an implicit interpretation of OAR 436-035-0400(3) and (5). That construction, we conclude, is inconsistent with the rule's unambiguous text, which requires an evaluation of the worker's permanent condition, not merely the worker's current symptoms. Contrary to the ARU's construction, we conclude that OAR 436-035-0400(3) (2018) requires that a doctor's evaluation of the effects of permanent changes due to the worker's mental illness include whether the worker would experience deterioration or decompensation in work or a work-like setting, even if the worker is not currently working.

Thus, we disagree with the board that the ARU was not applying a construction of OAR 436-035-0400(3) (2018)

when it decided that evidence of what claimant would experience if he were to return to work or a work-like setting was not relevant. Despite that disagreement, however, we conclude that the ARU's construction of OAR 436-035-0400(3) is not a plausible one, because it is inconsistent with the rule's text. For that reason, we reject employer's contention in its first assignment of error that the board erred in not deferring to the ARU's construction. The board correctly determined that Thibert's opinion concerning the probability that claimant would experience deterioration or decompensation in a work, or a work-like, setting was relevant and supports the Class 2 level of impairment.

Employer's second assignment of error relates to the determination of work disability. When, as here, a worker has ratable permanent impairment and has not returned to regular work, the worker may be entitled to an additional benefit for work disability under ORS 656.214 (1)(c)(B) and ORS 656.214(1)(e), which includes consideration of the worker's age, education, and adaptability. *See also* OAR 436-035-0012. The education factor includes a value for "specific vocational preparation" (SVP)—a value based on the jobs successfully performed before injury. The SVP value is determined by identifying the worker's job-at-injury in the Dictionary of Occupational Titles (DOT). OAR 436-035-0012(5).

On judicial review, employer contends that the board erred in determining that claimant's job-at-injury was "deputy sheriff," resulting in an SVP value of "5." Employer contends that claimant's job-at-injury was "lieutenant," which would result in an SVP value of "8." Claimant challenges employer's preservation of the argument, noting that employer never disputed claimant's contention at the hearing that his job-at-injury was "deputy sheriff." We agree with claimant that it is not apparent that employer preserved the current contention before the ALJ. *See Rushton v. Oregon Medical Board*, 313 Or App 574, 576-77, 497 P3d 814 (2021) (explaining that the rules of preservation apply in judicial review proceedings and require a party to provide the agency with an explanation of the objection that is specific enough to ensure that the agency is able to consider

the point and avoid committing the error). Even assuming that the issue has been adequately preserved, however, we conclude that the board's finding is supported by substantial evidence. We therefore summarily reject the second assignment of error.

Affirmed.