38 October 8, 2025 No. 868

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of Florence Stella,
Claimant.

Florence STELLA,
*Petitioner,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*
Department of Human Services
629809;
A181593

Argued and submitted October 18, 2024.

Katelyn S. Oldham argued the cause for petitioner. Also on the briefs was Oldham Law Office, LLC.

Emily N. Snook, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Petitioner seeks judicial review of a final order in a contested case proceeding before the Oregon Department of Human Services (ODHS) that resulted in the termination of her enrollment as a homecare provider, based on the conclusion that petitioner committed "fiscal improprieties." Petitioner asserts that ODHS exceeded its authority when, after an Office of Administrative Hearings (OAH) Administrative Law Judge (ALJ) had already issued a final order, ODHS rescinded the delegation of final order authority that it had given to OAH and subsequently issued its own final order, reaching a different conclusion than the ALJ had. Petitioner additionally argues that the final order is not supported by substantial evidence and that ODHS violated her constitutional due process rights.[1] We conclude that ODHS did not exceed its authority when it rescinded OAH's final order authority and treated the ALJ order as a proposed order. We further conclude that the Final Order is supported by substantial evidence and substantial reason, and that ODHS did not violate petitioner's due process rights. We therefore affirm.

BACKGROUND AND PROCEDURAL HISTORY

The facts and procedural history are uncontested. Petitioner worked for many years as an in-home caregiver for her partner. In February 2022, petitioner was hospitalized for COVID-19. Her client was also hospitalized for COVID-19 two days later and spent nearly two weeks in the hospital. During the time her client was hospitalized, and after having left the hospital but still being quite ill from COVID-19, petitioner clocked in and out of work multiple times via the smartphone app used to track her hours, despite not having worked.

ODHS was alerted that petitioner had logged hours that she had not worked and sent petitioner a letter explaining the purported violation and notifying her of an administrative review conference to address the matter. On July 19,

---

[1] Petitioner's brief at several points asserts that ODHS's refusal to grant reconsideration of the final order was also error. However, petitioner has not developed any independent legal argument that the denial of reconsideration was an independent error. We therefore do not reach that issue.

2022, ODHS sent petitioner notice that her homecare provider enrollment and number were being terminated based on petitioner lacking the skills, knowledge, and ability to adequately or safely perform the required work, and based on her having committed fiscal improprieties. Both violations were based on her claiming time for services that she did not provide. Petitioner requested a hearing on the matter.

ODHS referred the case to an OAH ALJ for preparation of a final order. Following a hearing, the ALJ issued an order on October 19, 2022, concluding that petitioner did not lack the skills, knowledge or ability to perform the required work and "did not intend to receive pay for the time she was not working." The ALJ found that petitioner's cognition was affected by her COVID-19 symptoms and that she had "absentmindedly clocked into and out of work out of habit in response to the alerts on her smartphone." The ALJ noted: "As set forth in OAR 411-031-0020(22)(a)(L), the Department only considers acts as fiscal impropriety when committed intentionally for financial gain." Because there was no intent, the ALJ concluded that petitioner's mistakes did not rise to the level of fiscal impropriety.

Five days later, on October 24, 2022, ODHS issued an order rescinding the final order authority of OAH in the matter. The order stated that ODHS would treat the ALJ's final order as a proposed order, and that ODHS would amend the order on its own initiative and provide petitioner with the opportunity to respond before issuing a new final order.

On December 19, 2022, ODHS issued an Amended Proposed Order, which consisted of a redline edited copy of the ALJ's order. The order included a footnote explaining the revisions, noting that deleted text from the ALJ's order appeared in strikethrough and additions were shown with underlining, and that substantive modifications were explained in footnotes. The Amended Proposed Order retained all of the ALJ's fact findings, including that petitioner did not intend to receive pay for time she was not working, and that petitioner was not being terminated due to lack of skills, knowledge, or ability to adequately and safely perform the required work. However, it deleted the

ALJ's discussion regarding fiscal improprieties and replaced it with the following:

> "The evidence shows that [petitioner] claimed payment for hours that she did not work while the client was hospitalized. Claiming payment for hours not worked is a specific example of fiscal improprieties in OAR 411-031-0020(22)(a)(G). Therefore, the Department may terminate [petitioner's] homecare worker provider enrollment and number pursuant to OAR 411-031-0050(3)(e)."

The order included a footnote explaining the deletion of the ALJ's text:

> "The Department removed this section because the ALJ incorrectly interpreted and applied OAR 411-031-0050(3) and OAR 411-031-0020(22) to the facts of this case. Specifically, the ALJ interpreted OAR 411-031-0020(22)(a)(L) to mean that in order to constitute 'fiscal improprieties' the Department must establish that the claimant acted intentionally. That is not correct. The specifically enumerated examples of acts that constitute 'fiscal improprieties' in OAR 411-031-0020[(22)](a)(A)-(K) do not require the Department to establish that the claimant acted intentionally. Only the provision for 'intentional acts committed for financial gain' in OAR 411-031-0020(22)[(a)](L) requires the Department to establish that the claimant acted intentionally."

The Amended Proposed Order therefore affirmed the notice terminating petitioner's homecare worker enrollment and number. Petitioner was given 20 days to file written exceptions to the Amended Proposed Order and was notified that ODHS would issue a Final Order that would explain her appeal rights. The "Appeal Procedure" page also contained the original text regarding reconsideration and appeal of a Final Order that had been attached to the ALJ order, but it appeared in strikethrough text because it had been deleted. A footnote on the Appeal Procedure page noted that the section had changed based on ODHS issuing an Amended Proposed Order.

Petitioner did not file exceptions within 20 days of the Amended Proposed Order, and on January 31, 2023, ODHS adopted the Amended Proposed Order as the Final Order. The Final Order included information regarding the process for requesting reconsideration or filing a petition in

the Court of Appeals. Petitioner filed untimely exceptions to the Amended Proposed Order that ODHS declined to consider, and requested reconsideration, which was denied. Petitioner filed this petition for judicial review of the January 31 Final Order.

## REVOCATION OF OAH FINAL ORDER AUTHORITY

We begin with petitioner's argument that once the ALJ issued his final order, ODHS could not rescind the delegation of final order authority. Petitioner asserts that ODHS exceeded its statutory authority when, after the fact, it decided to treat the ALJ's final order as a proposed final order, and then amended the analysis and conclusion. ODHS maintains that it is the final authority on matters under its jurisdiction, and that it has the authority to act in whatever manner it deems appropriate to resolve a case, unless a statute or rule restricts its action. It asserts that no statute or rule limits its authority to act as it did, and as such it did not exceed its authority. We conclude that ODHS did not exceed its authority in any of the ways identified by petitioner when it revoked the delegation of final order authority.

Generally, administrative agencies are "creatures of statute" and as such, they "derive their authority" from legislation, including enabling statutes that mandate the agency's function and grant power, as well as general laws affecting administrative bodies. *City of Klamath Falls v. Environ. Quality Comm.*, 318 Or 532, 545, 870 P2d 825 (1994). An agency's authority "may also be circumscribed by the agency's own regulations." *Id.* Whether an agency action exceeded the agency's authority is a legal question that we review for legal error. *Boydston v. Liberty Northwest Ins. Corp.*, 166 Or App 336, 339, 999 P2d 503, *rev den*, 331 Or 191 (2000).

We have previously held that an agency retains broad powers to resolve matters before it, and that limitations on those powers must be explicitly laid out in statutes. For example, in *SAIF v. Fisher*, 100 Or App 288, 291, 785 P2d 1082 (1990), we noted that the Workers' Compensation Board had been granted plenary authority by the legislature to decide claims before it, and that with the exception of a single provision, there was nothing in the authorizing

statutes that limited the power of the board to withdraw a previously-issued decision. We stated that "[i]n the absence of a statutory provision limiting its authority to do so, an agency has plenary authority to decide matters committed to it by the legislature." *Id.* Similarly, in *Boydston*, we examined whether the Department of Consumer and Business Services had authority under the circumstances presented to abate and withdraw its own order and later issue a second order on reconsideration, in light of a statute setting a specified period for acting on a request for reconsideration. 166 Or App at 342-44. Citing *Fisher* and other authorities, we set forth some guiding principles for evaluating the scope of agency authority:

> "The starting point is the recognition that, without some legislative limitation, an agency has plenary authority to decide matters committed to it. That authority encompasses the authority to withdraw and reconsider the substance of a decision after it has been made. The legislature may, by statute, either retract that authority altogether, or it may place limits on how long that authority continues. But any retraction or limitation must be clear. That is, there must be some statutory provision that is specifically directed to and limits the withdrawal authority itself."

*Id.* at 341.

ODHS has been granted general authority over the provision of social services to elderly and disabled individuals, including regulatory functions with regard to program operations and the power to adopt rules for the provision of social services. ORS 410.070(1)(k). ORS 409.050 grants the Director of Human Services or their delegates the power to adopt necessary rules to carry out the functions of ODHS. ODHS has adopted rules for homecare workers' enrollment in its consumer-employed provider program, OAR Chapter 411, division 31, and specific rules for termination from that program. OAR 411-031-0050 (June 6, 2021).[2]

ORS 183.625 authorizes the delegation of authority by an agency to an ALJ to conduct contested case hearings. Hearing requests in homecare worker termination

---

[2] The relevant rules in OAR Chapter 411, division 031 have been amended multiple times since petitioner's hearing. All references are to the versions in effect at the time of the hearing.

matters are referred to OAH, as described in OAR chapter 137, division 003. OAR 411-031-0050(7)(b). The ODHS rules further state that, when a referral is made to OAH, "the Department shall indicate on the referral whether the Department is authorizing a proposed order, a proposed and final order, or a final order." OAR 411-031-0050(7)(c). ODHS therefore has discretion in deciding what kind of order an OAH ALJ issues.

The authorizing statutes and rules are silent as to the revocation of final order authority. Neither party has identified any law that limits ODHS's authority to reverse course and revoke final order authority after it has been delegated, or to otherwise change the referral to authorize a different kind of order than initially authorized. As was the case in *Boydston*, "the relevant question is not whether the legislature has granted an agency authority" to engage in some action, but "is, instead, whether the legislature has limited the agency's authority in that regard." 166 Or App at 340. Absent any such limitation on the OAH referral process, and the revocation of delegated authority, which petitioner fails to identify, we conclude that ODHS retained the authority to revoke the delegation of final order authority and treat the ALJ's order as a Proposed Final Order.

We are not convinced by petitioner's reference to ORS 183.482 as a limitation on the agency's ability to issue a new Final Order after the ALJ had issued a final order. That statute confers jurisdiction for judicial review of contested cases upon the Court of Appeals, and addresses the various effects of a request for judicial review. As relevant to petitioner's argument, subsection (6) states:

> "At any time subsequent to the filing of the petition for review and prior to the date set for hearing the agency may withdraw its order for purposes of reconsideration. If an agency withdraws an order for purposes of reconsideration the agency shall, within such time as the court may allow, affirm, modify or reverse its order. If the petitioner is dissatisfied with the agency action after withdrawal for purposes of reconsideration, the petitioner may refile the petition for review and the review shall proceed upon the revised order."

ORS 183.482(6). Petitioner asserts that the allowance for withdrawing and reconsidering a final order *after* the filing of a petition for review carries the implicit limitation that withdrawal and reconsideration is not permitted *prior to* the filing of a petition for review. We disagree. ORS 183.482(6) establishes that an agency retains some jurisdiction over a matter, even in the face of a petition for review in this court, unlike the rule that the filing of an appeal generally divests the lower tribunal of jurisdiction. *See* ORS 19.270 (establishing jurisdiction of appellate courts and laying out the limited purposes for which a trial court retains jurisdiction or may still act). The statutory acknowledgement of an agency's continuing jurisdiction to act even after the filing of a request for judicial review, at which point an agency might otherwise be expected to lack jurisdiction to act, does not lead to the inference that the agency lacks the authority to act prior to the filing of a request for judicial review. On the contrary, the interests of judicial efficiency would encourage corrections to be made to erroneous orders prior to the filing of a petition for judicial review. The model rules relating to contested case proceedings explicitly allow an agency to withdraw and reconsider a final order for 60 days after issuance, on the request of a party or on the agency's own initiative. OAR 137-003-0675(1) ("Unless otherwise provided by statute, a party may file a petition for reconsideration or rehearing of a final order in a contested case with the agency within 60 calendar days after the order is served."); OAR 137-003-0675(5) ("Within 60 calendar days after the order is served, the agency may, on its own initiative, reconsider the final order or rehear the case. * * * The procedural and substantive effect of reconsideration or rehearing under this section shall be identical to the effect of granting a party's petition for reconsideration or rehearing."). In such situations, if the agency determines that reconsideration is appropriate, it shall enter a new final order in accordance with the same procedures followed by an OAH ALJ, and may affirm or modify the existing order. OAR 137-003-0675(6)(a). We therefore reject petitioner's assertion that ORS 183.482(6) functions to limit an agency's authority to withdraw an order prior to a petition for judicial review having been filed.

We acknowledge that the process here was irregular and carries the appearance of ODHS changing course after it was dissatisfied with the outcome. That process is unfortunate because it raises concerns about the appearance of fairness. However, ODHS was the ultimate decision maker, and therefore had an interest in ensuring that the decision did not contain misstatements of the law or inaccurate interpretations of agency rules. ODHS did not have appeal rights to correct what it viewed as a misinterpretation of its rules. *Kaib's Roving R.Ph. Agency v. Employment Dept.*, 182 Or App 481, 484-85, 50 P3d 1193 (2002) ("The agency is not a party to the case, and the APA does not provide for the agency to seek judicial review of the final order. Indeed, there is no reason why it would want review of its own action." (Citing ORS 183.480(1), which permits a person adversely affected or aggrieved by an order or any party to an agency proceeding to seek judicial review of a final order)). ODHS therefore took steps to ensure that the order in petitioner's situation contained accurate statements of the law in accordance with the agency's understanding of its own rules. Although ODHS's decision to revoke OAH's final order authority and treat the ALJ's order as a proposed final order after it had been issued as a final order was unusual, petitioner received notice of the revocation of authority, was offered an opportunity to respond to the proposed changes, and had the right to seek reconsideration and judicial review of the Final Order.[3] We therefore conclude that ODHS did not exceed its statutory authority.

### MERITS OF THE FINAL ORDER

Petitioner asserts that, even if ODHS did not err in issuing its own Final Order after the ALJ's order, the Final Order is not supported by substantial evidence and

---

[3] Based on the notice and opportunity to file exceptions to the Amended Proposed Order, and the notice of appeal rights contained in the Final Order (including notice of the reconsideration process and the opportunity for judicial review), we reject without further discussion petitioner's argument that she was denied due process. Despite the Amended Proposed Order appearing in redline format with some information struck out and new information appearing in a different font, we readily conclude that petitioner was provided with sufficient notice of her rights, all of which she exercised (despite not doing so in a timely fashion with respect to the filing of exceptions). The Amended Proposed Order did not change any of the fact findings from the ALJ's order, and only altered the rule interpretation and legal conclusions, which petitioner then had the right to challenge and, in fact, continues to challenge through the current petition for review.

substantial reason. Petitioner asserts that ODHS's interpretation of "fiscal improprieties" as not requiring a showing of any intent lacks substantial reason and that a decision to terminate a homecare worker's enrollment for unintentional acts done while cognitively impaired is unreasonable and unsupported by substantial reason. ODHS maintains that its interpretation of the meaning of "fiscal improprieties" was plausible and did not conflict with any other rule or laws, and thus is entitled to deference. Under that interpretation, intent is irrelevant, and the findings of fact regarding petitioner's actions support the decision to terminate her enrollment. We conclude that the Final Order is supported by substantial evidence and substantial reason.

An agency's plausible interpretation of its own rule is entitled to deference. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P3d 119 (1994) (explaining that, under ORS 183.482(8)(a), a reviewing court will defer to an agency's interpretation of its own administrative rule if that interpretation is plausible); *Godinez v. SAIF*, 269 Or App 578, 582-83, 346 P3d 530 (2015) (explaining that deference to an agency's plausible interpretation of its own rules includes "an interpretation made in the course of applying the rule, if that interpretation is not inconsistent with the wording of the rule, its context, or any other source of law" and noting that "we use the same interpretive framework for administrative rules that we use for statutes").

OAR 411-031-0050(3)(e) states that ODHS may terminate a homecare worker's provider enrollment when a homecare worker "commits fiscal improprieties." OAR 411-031-0020(22) (July 31, 2018) defines fiscal improprieties:

"'Fiscal improprieties' means a homecare worker committed financial misconduct involving a consumer's money, property, or benefits.

"(a)   Fiscal improprieties include, but are not limited to:

"*****

"(G)   Claiming payment for hours not worked.

"*****

"(L)    Intentional acts committed for financial gain."

In the original order, the ALJ stated that "the Department only considers acts as fiscal impropriety when committed intentionally for financial gain," citing OAR 411-031-0020(22)(a)(L). In ODHS's final order, it explained that that interpretation of the meaning of "fiscal improprieties" was incorrect:

"The specifically enumerated examples of acts that constitute 'fiscal improprieties' in OAR 411-031-0020[(22)](a)(A)-(K) do not require the Department to establish that the claimant acted intentionally. Only the provision for 'intentional acts committed for financial gain' in OAR 411-031-0020(22)[(a)](L) requires the Department to establish that the claimant acted intentionally."

The order went on to conclude that, despite the lack of intent behind the acts, petitioner had nonetheless claimed payment for hours that she did not work while the client was hospitalized, which was a specific example of fiscal improprieties in OAR 411-031-0020(22)(a). Therefore, ODHS concluded that it could terminate petitioner's provider enrollment pursuant to OAR 411-031-0050(3)(e).

We conclude that ODHS's interpretation of OAR 411-031-0020(22)(a)(G) is plausible. On the face of the rule, there is no requirement that a claim for hours not worked carry any intent to defraud or achieve improper financial gain. There is some argument that the use of the term "improprieties" suggests intentional misconduct. However, the rest of the list provides context, and it contains other examples of fiscal improprieties that similarly do not require a showing of any ill intent, such as borrowing money, property, or belongings from a consumer or accepting or receiving items or services purchased for the worker by the consumer. OAR 411-031-0020(22)(a)(B), (D).[4] ODHS's interpretation of the rule as not requiring intent for "claiming payment for hours not worked" is a plausible interpretation of the rule. We therefore afford deference to that interpretation.

---

[4] That understanding is further supported by OAR 411-031-0020(22)(b), which carves out an exception for the exchange of money, gifts, or property between a homecare worker and a consumer if the two are related; absent that relationship, such exchanges would qualify as fiscal impropriety, without nefarious intent appearing to be a required showing.

Thus, we conclude that the board's order is supported by substantial evidence and substantial reason. There is no dispute that petitioner did not intend to claim payment for the hours she did not actually work. However, in light of ODHS's interpretation of the rule that it does not require a showing of intentional conduct, the finding that petitioner committed fiscal improprieties by claiming payment for hours she did not work, no matter how unintentionally, is supported by the evidence. ODHS acted within its discretion to terminate petitioner's enrollment upon that finding.

Affirmed.