No. 477 June 3, 2026 183

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CITIZENS FOR RESPONSIBLE DEVELOPMENT IN
THE DALLES,
*Petitioner,*

*v.*

WAL-MART STORES INC.
and Department of State Lands,
*Respondents.*

Department of State Lands
43798RF;
A182055

Argued and submitted March 3, 2025.

Cary L. Allen argued the cause for petitioner. Also on the briefs were Law Office of Cary Allen LLC and Karl G. Anuta, Corey Oken, and Law Offices of Karl G. Anuta, P.C.

Gregory S. Hathaway argued the cause for respondent Wal-Mart Stores, Inc. Also on the brief was Hathaway Larson LLP.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent Department of State Lands. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

LAGESEN, C. J.

Affirmed.

## LAGESEN, C. J.

This proceeding for judicial review of a final order of the Department of State Lands (DSL) approving the issuance of a removal/fill permit to respondent Wal-Mart Stores, Inc., is before us for the second time, following agency proceedings on remand from the Supreme Court. Petitioner Citizens for Responsible Development in the Dalles (CFRD) raises three assignments of error contending that DSL erred in two primary ways on remand: (1) by conducting the remand proceedings in a manner that exceeded the scope of the Supreme Court's remand, was contrary to administrative rule, and inconsistent with the doctrines of law of the case and issue preclusion; and (2) by issuing an order unsupported by substantial evidence or reason. We affirm.

## I.   BACKGROUND

We set forth the background of this case, which is mainly procedural, before addressing petitioner's assignments of error.

This case is about whether Wal-Mart has satisfied the requirements under ORS 196.825 for the issuance of a removal/fill permit subject to that provision. In particular, the issue is whether DSL permissibly determined that Wal-Mart's proposed project, for which it sought the permit, satisfied ORS 196.825(1)(b)'s requirement that the project "would not unreasonably interfere with the use of the state's waters for navigation, fishing, and public recreation."

In May 2013, DSL issued a removal/fill permit to Wal-Mart Stores, Inc., having determined that the requirements of ORS 196.825, among other requirements, were satisfied. CFRD challenged the permit and, following a contested case hearing conducted by an Administrative Law Judge at the Office of Administrative Hearings, DSL issued a final order on October 9, 2014. The final order granted the permit and determined that the permit, as conditioned, met all the requirements by statute and rule, and was otherwise within DSL's discretion to issue. With respect to the requirements of ORS 196.825, DSL considered the public need, public benefits, and economic costs to the public of Wal-Mart's proposed project as required by ORS 196.825(3)(a) and (b)

and found that the evidence was inconclusive with respect to those factors. Notwithstanding those inconclusive findings with respect to the public benefits of the project, the public need for the project, and the economic costs to the public of the project, DSL determined that the issuance of the permit was allowed under ORS 196.825(1) due to the project's location and the known activities at that location. Specifically, DSL reasoned that there would be no unreasonable interference with the use of the state's waters for navigation, fishing, and public recreation because the "project is not located on a state-owned waterway, and there are no known public fishing or public recreation activities on the site."

CFRD petitioned for judicial review in our court. On review, relying on case law construing a prior version of ORS 196.825, we agreed with CFRD that DSL's order approving the permit rested on an erroneous interpretation of ORS 196.825. *Citizens for Resp. Devel. In The Dalles v. Wal-Mart*, 295 Or App 310, 321, 433 P3d 364 (2018) (*CFRD I*). We concluded that, correctly construed, ORS 196.825 "requires DSL to find that the public need for a proposed project predominates before DSL has the authority to issue a wetland fill and removal permit for the project." *Id.* Therefore, "[b]ecause DSL found it was inconclusive whether the project would address a public need, DSL lacked authority to issue the permit." *Id.* We therefore reversed DSL's order and remanded to the agency. *Id.*

DSL petitioned the Supreme Court for review of our decision, and the Supreme Court allowed review. On review, the court affirmed our decision to remand the case to DSL but disagreed with our interpretation of ORS 196.825. The court rejected our "premise that ORS 196.825 conditions the issuance of every permit on a finding that the proposed project will serve a 'public need.'" *Citizens for Resp. Devel. In The Dalles v. Wal-Mart*, 366 Or 272, 274, 461 P3d 956 (2020) (*CFRD II*). Instead, the court concluded that ORS 196.825(1) requires that

"if DSL finds that the proposed fill will 'interfere with the paramount policy of this state to preserve the use of its waters for navigation, fishing, and public recreation,' then

DSL must determine whether the interference is 'unreasonable' by weighing the interference with public uses for which 'waters of the state' are preserved against the expanded list of public-benefit considerations [in ORS 196.825(3)]"

*Id.* at 285-86.

The court clarified that, as a result, there are "two components" that DSL must address to determine if its authority is limited by ORS 196.825(1)(b): "either the project will not interfere with the public uses for which 'waters of the state' are preserved, or the interference is 'not unreasonable' when weighed against the range of public benefits." *Id.* at 286. The court determined that DSL's order did not reflect that it found either component satisfied. *Id.*

The court explained that DSL's assertion that the project would not unreasonably interfere with the use of the state's waters in light of the project site's location and usage was insufficient because the agency acknowledged that fill or removal "of a private waterway on private land 'conceivably' could 'impact what happens on a downstream [public] river.'" *Id.* at 289. Further, DSL did not make any findings as to whether that conceivable interference was not unreasonable because DSL found that the record was inconclusive on the public benefit considerations. *Id.* at 290. The court explained that "absent a finding that the project will not 'interfere' with the 'paramount policy of this state to preserve the use of its waters for navigation, fishing, and public recreation,' the record does not support DSL's determination that the project will 'not unreasonably interfere.'" *Id.* at 291. Noting that the "current record lacks a finding about whether or not the project will 'interfere,'" the court determined that it was required to reverse and remand DSL's decision because that decision failed to adequately link the factual findings to the legal conclusion. *Id.* (citing *Drew v. PSRB*, 322 Or 491, 500-01, 909 P2d 1211 (1996), and *Bergerson v. Salem-Keizer School District*, 341 Or 401, 415, 144 P3d 918 (2006)). Accordingly, the court reversed and remanded "for further proceedings." *Id.*

On remand, DSL re-referred the matter to the Office of Administrative Hearings (OAH). In a Statement of

Referral, DSL requested, pursuant to OAR 137-003-0655(2), that an administrative law judge (ALJ) conduct further hearing, with the agency defining the scope of the hearing. In DSL's Statement of Referral, the agency stated that:

"[t]he Supreme Court concluded that the Department did not properly find whether the project at issue in this case would interfere with the listed uses, and therefore remanded the case to the Department.

"Pursuant to OAR 137-003-0655(2), the Department requests an administrative law judge to conduct further hearing in this matter, and defines the scope of the hearing as follows: the administrative judge shall take additional evidence pertaining to (1) the project's interference or lack thereof with the use of the state's waters for navigation, fishing, and public recreation, (2) the public need for the proposed fill or removal and the social, economic, or other public benefits likely to result from the proposed fill or removal, and (3) the economic cost to the public if the proposed fill or removal is not accomplished.

"The Department defines the issue to be addressed as: whether the project described in the application 'would not unreasonably interfere with the paramount policy of this state to preserve the use of its waters for navigation, fishing, and public recreation,' based on the process prescribed by the Oregon Supreme Court for making this finding."

In DSL's view, OAR 137-003-0655 permitted OAH to hear the matter on remand upon DSL's referral, and DSL has sole authority to define the scope of the hearing on remand. DSL determined that the further hearing was warranted because it had based its original decision on an erroneous interpretation of ORS 196.825, and the Supreme Court remanded the matter for further proceedings based on a different interpretation of ORS 196.825(1)(b). DSL explained that the "difference in interpretation affects the finding required by ORS 196.825(1)(b) as a whole, and not just the question of whether there is any interference with the preservation of the state's waters for navigation, fishing, or public recreation."

CFRD challenged both OAH's jurisdiction to conduct the additional hearing and the scope of the hearing on remand. CFRD argued that for OAH to have jurisdiction to

hold a hearing in this matter, DSL must first issue a revised permit decision—either reissuing or denying the permit—based on the existing record and findings, and one additional finding of whether the project will or will not interfere with the use of the state's waters for navigation, fishing, and public recreation. CFRD contended that OAH did not have jurisdiction until the permitting decision was made and appealed by one of the parties. CFRD also argued that OAR 137-003-0655 did not authorize DSL's OAH referral and request for an ALJ to conduct further hearing. CFRD further took the position that the scope of DSL's referral was inappropriate because "DSL has attempted to refer to issues that were already decided in this matter, and that are now binding" based on the doctrine of "law of the case."

OAH scheduled a contested case hearing. Before the hearing, the ALJ issued a ruling on OAH's authority to conduct further proceedings, and the scope of those proceedings. The ALJ agreed with DSL that OAH had the authority to conduct proceedings on remand on DSL's referral and that DSL had the authority to define the scope of the proceedings in response to the Supreme Court's remand. The ALJ then held a contested hearing in October 2021. Nearly a year later, the ALJ issued a proposed order "on re-referral for limited issue" concluding that Wal-Mart satisfied its burden of establishing that the project "would not unreasonably interfere with the paramount policy of the state to preserve the use of its waters for navigation, fishing, and public recreation, pursuant to ORS 196.825(1)(b), based on the weighing process set forth in [CFRD II.]"

In the proposed order, the ALJ applied the Supreme Court's two-part test and found that the "proposed project will have minimal interference with public fishing and recreation." Having found that the project would have minimal interference, the ALJ focused its analysis on whether the "interference [was] unreasonable by weighing it against the public need for the proposed fill; any social, economic, or other public benefits likely to result from the proposed fill; and any economic cost to the public if the proposed fill is not accomplished."

Addressing the public benefits, the ALJ found that "the record establishes that the proposed project offers public benefits in that it will provide temporary construction jobs as well as permanent full-time and part-time employment at a variety of in-store positions, from managers to greeters." The ALJ also found that the "record establishes that the proposed store is likely to result in offsite public improvements totaling more than $7.2 million, more than $800,000 in development charges and fees, and at least $150,000 in tax revenues—all of which are public benefits."

Addressing economic cost, the ALJ determined that other uses for the site absent construction of the proposed store would not yield the same amount of public economic benefits as the proposed store. Further, without completion of the proposed project, "there would be an economic cost to [T]he Dalles community in the form of lost infrastructure improvements, tax revenues, fees, and development charges." The record also showed that there was likely to be a minimal economic cost to the public if the proposed project was not completed.

Finally, with respect to public need, the ALJ found that the record was still inconclusive as to whether the project would address a public need.

Ultimately, after noting that Wal-Mart had not demonstrated a public need for the project, the ALJ determined that the public benefits and economic costs associated with the project outweighed the project's interference with the uses of the waters of the state, explaining:

"the evidence shows the proposed project provides at least moderate social, economic, and other public benefits to The Dalles community and at least minimal economic cost if the proposed store is not built. The evidence of interference with use of waters of the state does not outweigh the evidence on the public benefit side of the equation. The greater weight of evidence is on the side of public benefits and economic costs without the project."

DSL issued a final order adopting the ALJ's proposed order and issued the permit to Wal-Mart. Petitioner seeks judicial review of that order under ORS 183.482(1).

## II.   ANALYSIS

In three assignments of error, CFRD contends that DSL erred in two primary ways on remand from the Supreme Court: (1) by conducting the remand proceedings in a manner that exceeded the scope of the Supreme Court's remand, was contrary to administrative rule, and inconsistent with the doctrines of law of the case and issue preclusion; and (2) by issuing an order unsupported by substantial evidence or reason. We conclude that DSL did not err in any of the respects alleged.

### A.   *Remand Proceedings*

We first address CFRD's contentions that DSL's conduct of the remand proceedings exceeded the scope of its authority in several different ways. How an agency conducts proceedings on remand is, in general, a matter of discretion, subject to restrictions on that discretion by the scope of the remand or other applicable sources of law. *See, e.g., Gearhart v. PUC*, 356 Or 216, 233-34, 339 P3d 904 (2014) (discussing generally the extent of agency authority on remand from a court). Accordingly, we review to determine whether the agency's exercise of discretion was within the range of discretion delegated to it, consistent with applicable rules and otherwise in accordance with applicable law. ORS 183.482(8)(b).

### 1.   *Law-of-the-case and issue preclusion doctrines*

CFRD argues that the law-of-the-case and issue preclusion doctrines precluded DSL from referring the matter to OHA for further development of the factual record and additional findings on remand from the Supreme Court. We disagree.

With respect to issue preclusion, that doctrine does not apply in this procedural context. As set forth in CFRD's own brief, that doctrine may apply if an issue has been resolved in a *prior* proceeding: "[i]f one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue *in another proceeding* if five requirements are met[.]" *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 682 P2d 1293 (1993) (emphasis added). This matter is a single proceeding that has had multiple stages because of

the appellate court review process. Each stage of the process does not constitute a separate proceeding for purposes of the doctrine of issue preclusion.

In contrast with the doctrine of issue preclusion, the law-of-the-case doctrine does apply in this procedural context and could, in theory, limit the approaches that were available to DSL on remand from the Supreme Court. Under that doctrine, "an appellate decision is binding and conclusive for purposes of future proceedings in the same case" with respect to those parts of the appellate decision "that were necessary to the disposition of the appeal." *Estrada v. Federal Express Corp.*, 298 Or App 111, 118, 445 P3d 1276, *rev den*, 365 Or 769 (2019) (quotation marks and citations omitted). We have applied that court-created doctrine in both proceedings arising from courts and proceedings arising from administrative agencies. *See, e.g., id.* (agency proceeding); *Hayes Oyster Co. v. Dulcich*, 199 Or App 43, 53-54, 110 P3d 615, *rev den*, 339 Or 544 (2005) (court proceeding).

Here, CFRD contends that "DSL's Findings on public need and benefit were an essential part of the issues and facts decided on by this Court" and the Supreme Court during the first round of appeals. Accordingly, CFRD argues, DSL was precluded from reopening the record and revisiting those findings on remand.

CFRD is correct that DSL's findings factored into the Supreme Court's analysis and informed the court's decision to remand. We are not persuaded, however, that the role those findings played in the disposition is one that means that DSL was required to treat them as preclusive on remand. The Supreme Court's decision to reverse and remand ultimately turned on its conclusion that DSL erroneously interpreted ORS 196.825(1)(b). The court explained that DSL's erroneous interpretation required the court to reverse and remand to the agency for further proceedings because, when the correct interpretation of ORS 196.825(1)(b) was taken into account, the facts contained in the agency's order did not supply the essential link between the facts found and the ultimate conclusion that the project would not unreasonably interfere with the waters of the state. *CFRD II*, 366 Or at 290-91. In reaching that conclusion, the court

did not review the agency's factual findings for substantial evidence. In the absence of that review, we cannot read the court's decision to remand the case back to DSL to suggest that the record could not support the findings needed to authorize the issuance of the permit or that DSL would be barred from reopening the record and revisiting those findings in light of the court's articulation of the correct legal standard. Under those circumstances, CFRD has not demonstrated that the law-of-the-case doctrine rendered preclusive DSL's previous "inconclusive" findings regarding the public benefits and economic costs associated with the project.

    2.   *Scope of the remand*

        CFRD next argues that the scope of the Supreme Court's remand was narrow. CFRD contends that the Supreme Court remanded the case to DSL for a single purpose: to make a finding—on the existing record—as to whether the proposed project would "interfere" with the state's policy to preserve the state's waters for fishing, navigation, and public recreation. Therefore, CFRD asserts, DSL exceeded the scope of the Supreme Court's remand when it referred the matter to OAH for the purpose of further developing the record as to the public benefits of the proposed project and in making further factual findings about those benefits after previously finding that the evidence was inconclusive as to the public benefits of the proposed project. Rather, CFRD argues, DSL was required to deny the permit if it found on the existing record that the proposed project interfered with the public uses for which the waters of the state must be preserved; only if DSL found on the existing record that there was no such interference, could DSL issue the permit, because the inconclusive evidence of public benefits would, as a matter of law, render any interference at all "unreasonabl[e]" for purposes of ORS 196.825(1).

        In response, DSL argues that the scope of the Supreme Court's remand was not, by its terms, so narrow. In DSL's view, the Supreme Court concluded that its prior order had been based on an incorrect interpretation of ORS 196.825(1) and that the remand was broad enough to permit DSL to conduct whatever proceedings it deemed appropriate

for the purpose of deciding the matter under the correct interpretation of law.

We conclude that DSL's actions were within the scope of the Supreme Court's remand. "Under general principles of administrative law, \* \* \* remand usually is the appropriate remedy when the court concludes that an agency has erred." *Gearhart*, 356 Or at 233-34. "[A] general remand, without specific instructions to the agency, allows the court to perform its review function without invading the province of the agency." *Id.* at 234. "Even when an agency has interpreted a statute incorrectly—that is, when the agency has made a legal error—courts ordinarily remand for the agency to apply the law as interpreted by the court." *Id.* This accords with the general principle "that an agency retains broad powers to resolve the matters before it, and that limitations on those powers must be explicitly laid out in statutes." *Stella v. Dept. of Human Services*, 344 Or App 38, 42, 580 P3d 899 (2025), *rev den*, ___ Or ___ (2026).

That is not to say that a reviewing court cannot impose constraints on an agency on remand. On the contrary, "[w]hen an appellate court directs action on remand, the tribunal typically may determine how to accomplish the directed outcome if it does so within the boundaries set by the remand." *Village at Main Street Phase II, LLC II v. Dept. of Rev.*, 360 Or 738, 748, 387 P3d 374 (2016). An agency's action on remand may be constrained in two ways: (1) by an appellate court's express order or implied directive and (2) by the law of the case doctrine. *Id.* "The scope of the remand is established by the appellate court's opinion in a particular case." *Id.* at 749.

In this instance, we have already rejected CFRD's contention that the law-of-the-case doctrine constrained DSL from revisiting the findings at issue on remand. The Supreme Court's express order, which reversed and remanded for "further proceedings," likewise imposed no such constraint. Finally, nothing in the balance of the decision allows for the conclusion that the Supreme Court intended by implication to preclude DSL from revising its previous findings. If anything, the court's observation that, the "current record" lacked a link between the findings made and the decision

reached tends to suggest the opposite: that DSL would have the discretion on remand to expand the record if warranted to account for the Supreme Court's definitive interpretation of ORS 196.825(1)(b).

### 3. *Administrative rules*

Petitioner's final argument regarding the scope of the proceedings on remand is that the ALJ "erred by holding a Contested Case Hearing when there was no jurisdiction to do so." Petitioner's theory is that the administrative rules governing contested case hearings do not expressly provide for a further hearing on remand to an agency from an appellate court. Contrary to petitioner's argument, however, the plain terms of OAR 137-003-0655 broadly authorized an ALJ to conduct further hearings upon an agency's request. OAR 137-003-0655(1) states that "[a]fter issuance of the proposed order, if any, the administrative law judge shall not hold any further hearing or revise or amend the proposed order except at the request of the agency, except as provided in this subsection." Subsection (2) sets out the process upon an agency's request for a further hearing: "[i]f the agency requests the administrative law judge to conduct a further hearing under section (1) of this rule, the agency shall specify the scope of the hearing and the issues to be addressed." Those provisions, by their terms, authorized DSL to request, and the ALJ to conduct, the additional proceedings on remand developing the factual record in light of the Supreme Court's construction of ORS 196.825.

Arguing for a different conclusion, petitioner points to two other rule provisions that allow for the conduct of additional hearings before an ALJ after the issuance of a proposed final order: OAR 137-003-0655(5) and OAR 137-003-0675(6)(b). Petitioner notes that OAR 137-003-0655(5) allows for an agency to request a further hearing upon the receipt of exceptions and that OAR 137-003-675(6)(b) allows an agency to request a further hearing after an agency issues, but then elects to reconsider, a final order. Petitioner contends that those provisions would be superfluous if OAR 137-003-0655(1) and (2) are construed broadly to authorize an ALJ to conduct further proceedings upon an agency's request.

Petitioner's argument—which treats the administrative rules as a *grant* of authority—rests on a misconception of the nature of agency authority. Again, as we recently observed in *Stella*, an agency has "'plenary authority'" to resolve the matters committed to it for decision. 344 Or App at 43 (quoting *Boydston v. Liberty Northwest Ins. Co.*, 166 Or App 336, 339, 999 P2d 503, *rev den*, 331 Or 191 (2000)). The question is whether the legislature or agency itself has *limited* that authority by statute or rule. The rules identified by petitioner do not expressly or impliedly limit an agency's authority to reopen a contested case hearing on remand from an appellate court and, for that reason, do not support the conclusion that the remand proceedings were constrained by administrative rule.

## B.   *Substantial Evidence and Substantial Reason*

In the remaining assignment of error, CFRD asserts that DSL's findings regarding the public benefits and economic costs of the project are not supported by substantial evidence and that DSL's ultimate determination that the project will not "unreasonably interfere" with the waters of the state is not supported by substantial reason.

Starting with substantial reason, the substantial reason standard requires a determination of whether findings of fact logically lead to conclusions of law. *Goin v. Employment Dept.*, 203 Or App 758, 763, 126 P3d 734 (2006); *see also Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996) (addressing line of decisions since 1975 holding that agencies "are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts" (emphases in original)).

Here, DSL's order satisfies that standard. The order explains that DSL found that the project had "moderate" public benefits and that there would be "minimal" economic costs to the public if the project were not completed. The order explains that it found that "the proposed project will have at most minimal interference with fishing and public recreation at Chenoweth Creek and the Columbia River." It then weighed those benefits and costs against the level of

interference, determining that "[t]he evidence of interference with use of waters of the state does not outweigh the evidence on the public benefit side of the equation." Based on those findings about the weight of the evidence, the order connects those findings to DSL's ultimate legal conclusion: "Walmart has therefore satisfied its burden of establishing that the proposed project will not unreasonably interfere with the paramount policy of the state to preserve the use of its waters for navigation, fishing and public recreation, based on the weighing process set forth in [*CFRD II*]."

Turning to the substantial evidence question, we understand CFRD to challenge DSL's findings that the project had moderate public benefits, and that there would be minimal economic costs to the public if the project were not completed. We do not understand CFRD to challenge the finding that the project "will have at most minimal interference with fishing and public recreation at Chenoweth Creek and the Columbia River."

Evaluating a challenge to an agency's finding for substantial evidence "requires us to determine whether the record, taken as a whole, would permit a reasonable person to make the disputed finding." *United Academics of OSU v. OSU*, 315 Or App 348, 355, 502 P3d 254 (2021). Here, Wal-Mart presented evidence that, when viewed in the context of the record as a whole, would allow a reasonable person to make the challenged findings. Although CFRD argues vigorously otherwise, ultimately those arguments are ones that demonstrate that, on this record, a reasonable person would not have been compelled to make the findings that DSL did and could have remained reasonably unconvinced about the public benefits and economic costs to the public of the project. In other words, CFRD's arguments are ones that could convince a reasonable factfinder to reject Wal-Mart's evidence. But the fact that DSL's findings were not compelled on this record does not mean that DSL's findings on the evidence presented were unreasonable, and it is not our role in this context to re-weigh the evidence in light of CFRD's arguments about why it should be deemed unpersuasive. For those reasons, CFRD's substantial evidence challenge fails.

Affirmed.